PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: SUSAN QUIGLEY,

       *Debtor.*

---

HELEN M. MORRIS,

     *Trustee-Appellant,*

  v.

SUSAN QUIGLEY,

      *Debtor-Appellee.*

           No. 09-2102

---

UNITED STATES OF AMERICA; ECAST
SETTLEMENT CORPORATION, assignee
of FIA Card Services a/k/a Bank
of America,

  *Amici Supporting Appellant.*

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., Senior District Judge.
(5:08-cv-00126-FPS)

Argued: January 26, 2012

Decided: March 7, 2012

Before TRAXLER, Chief Judge, and MOTZ and SHEDD,
Circuit Judges.

Reversed and remanded by published opinion. Chief Judge Traxler wrote the opinion, in which Judge Motz and Judge Shedd joined.

## COUNSEL

**ARGUED:** Susan Kaye Cannon-Ryan, OFFICE OF THE CHAPTER 13 TRUSTEE, South Charleston, West Virginia, for Appellant. Wendy Cox, UNITED STATES DEPART-MENT OF JUSTICE, Washington, D.C.; William Andrew McNeal, BECKET & LEE, LLP, Malvern, Pennsylvania, for Amici Supporting Appellant. Kelly Gene Kotur, DAVIS LAW OFFICES, Bridgeport, Ohio, for Appellee. **ON BRIEF:** D. William Davis, DAVIS LAW OFFICES, Bridge-port, Ohio, for Appellee. W. Clarkson McDow, Jr., United States Trustee, Region 4, Douglas A. Kilmer, UNITED STATES DEPARTMENT OF JUSTICE, Charleston, West Virginia; Ramona D. Elliott, General Counsel, P. Matthew Sutko, Associate General Counsel, Catherine B. Sevcenko, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for the United States, Amicus Supporting Appellant. Gilbert B. Weisman, BECKET & LEE, LLP, Malvern, Pennsylvania, for eCast Settlement Corporation, Amicus Supporting Appellant.

## OPINION

TRAXLER, Chief Judge:

Helen M. Morris ("the Trustee"), the bankruptcy trustee in the Chapter 13 bankruptcy of Susan Quigley ("the Debtor"), appeals a district court order affirming a bankruptcy court ruling that in calculating projected disposable income, the Debtor could deduct the monthly payments that she would not in fact be required to make. We reverse and remand.

## I.

The Debtor filed a Chapter 13 bankruptcy petition on January 11, 2008. On her Schedule B, which lists personal property, she listed two all-terrain vehicles ("ATVs"). She stated on her Schedule D, listing secured debts, that both ATVs were collateral for promissory notes that she executed. In her proposed repayment plan, however, she represented that she would be surrendering both vehicles to the secured creditors. Thus, she would no longer be required to make the payments on the ATVs.

On her Schedule B, the Debtor also listed a 2004 Ford truck as her personal property, although the same schedule notes that the truck belongs to her ex-boyfriend. The vehicle's title does list the Debtor as a legal owner, but her former boyfriend was making payments on the truck, was a co-debtor on the note, and was in possession of the vehicle.

On her statement of current monthly income, calculation of commitment period, and calculation of disposable income (Form B22C), the Debtor listed the payments owed on the two ATVs and the truck as expense deductions. She noted on that form that during the 60 months encompassed by her repayment plan, she was obligated to make monthly payments of $40.87 on one ATV, $122.46 on the other, and $307.83 on the truck. According to her calculations, she had no disposable income to pay to unsecured creditors.[1] Her plan nevertheless proposed that she pay $15,960 to the Trustee over the 60-month life of the plan, in bi-weekly installments of $122.77. The Debtor estimated that $7,992 of that total would be payable to unsecured creditors, which would amount to approximately 26% of their filed claims.

---

[1]In fact, her calculations showed her monthly disposable income as negative $48.08.

The Trustee objected to the proposed plan on the basis that it did not allot all of the Debtor's projected disposable income during the repayment period to payments to her unsecured creditors. More specifically, the Trustee contended that the Debtor had understated her projected disposable income by deducting the amount of the payments for the three vehicles as expenses, when the Debtor would not actually be making any of those payments once the plan was implemented.

The bankruptcy court sustained the Trustee's objection in part and overruled it in part. Regarding the truck, the court ruled that because the Debtor's ex-boyfriend was already making her payments, the Debtor's then-current income should have been increased to account for that. Accordingly, the court required her to amend her forms to include those amounts as monthly income (which resulted in a new disposable monthly income of $248.75). However, the court overruled the Trustee's objection regarding the ATVs. The court reasoned the Bankruptcy Code requires that projected disposable income be based only on expenses and income from the six-month period preceding a bankruptcy filing and that the court was statutorily precluded from considering even known changes in the Debtor's future expenses.

The Trustee then appealed to the district court, which affirmed the bankruptcy court's ruling. This appeal followed.

II.

The Trustee argues that the district court erred in affirming the bankruptcy court decision. We agree.

When reviewing a district court order on appeal from the bankruptcy court, we review the district court decision de novo, "effectively standing in its shoes to consider directly the findings of fact and conclusions of law by the bankruptcy court." *Cypher Chiropractic Ctr. v. Runski (In re Runski)*, 102 F.3d 744, 745 (4th Cir. 1996). "[W]e review legal conclusions

by the bankruptcy court de novo and may overturn its factual determinations only upon a showing of clear error." *Id.*

We begin by discussing the Bankruptcy Code provisions that are relevant to this appeal.

Attempting to address some perceived abuses in the bankruptcy system, as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Congress revised the Bankruptcy Code by requiring debtors with above-median income, such as the Debtor, to file for bankruptcy under Chapter 13's reorganization provisions rather than the liquidation provisions of Chapter 7. Under Chapter 13, a debtor proposes a plan under which a portion of the debtor's future income will be paid to the bankruptcy trustee. *See* 11 U.S.C.A. §§ 1321, 1322 (West 2004 & Supp. 2011). The bankruptcy court then must confirm the plan if it complies with the applicable requirements, *see* 11 U.S.C.A. § 1325 (West 2004 & Supp. 2011), which include the following:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
>> (A) [the plan provides for the full payment of all unsecured claims]; or
>>
>> (B) the plan provides that all of the debtor's *projected disposable income* to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
>
> (2) For purposes of this subsection, the term "disposable income" means current monthly income

received by the debtor . . . less amounts reasonably necessary to be expended—

> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor . . .

. . .

> (3) Amounts reasonably necessary to be expended under paragraph (2) . . . shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than—

. . .

> (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number . . . .

11 U.S.C.A. § 1325(b) (emphasis added).

In the present case, it is undisputed that the Debtor's revised plan will not provide for full payment to the unsecured creditors. Thus, to be confirmable, the plan must allot all of the Debtor's projected disposable income during the plan period to payments to unsecured creditors. The question before us now is whether the bankruptcy court erred in concluding that the Debtor's projected disposable income should not take into account her intention to surrender her two ATVs to her secured creditors.

The Bankruptcy Code does not define "projected disposable income," but it does define "disposable income" as "current monthly income . . . less amounts reasonably necessary

to be expended." 11 U.S.C.A. § 1325(b)(2). "Current monthly income" is generally defined to mean the debtor's average monthly income for the six-month period preceding the debtor's bankruptcy filing. *See* 11 U.S.C.A. § 101(10A)(A) (West Supp. 2011). For debtors with above-median incomes, "amounts reasonably necessary to be expended" are determined by reference to the Chapter 7 "Means Test." *See* 11 U.S.C.A. §§ 707(b)(2), 1325(b)(3) (West Supp. 2011). This test lists certain types of expenses that a debtor may deduct from his current monthly income. *See* 11 U.S.C.A. § 707(b)(2)(A)(i), (ii). As is particularly relevant here, a debtor may deduct "average monthly payments on account of secured debts." 11 U.S.C.A. § 707(b)(2)(A)(iii).

What we must decide in this case is whether a debtor's "projected disposable income" must be equal to the debtor's "disposable income" for purposes of satisfying § 1325(b)(1)(B), or whether the projected disposable income should reflect changes that have occurred or that will occur and that are known as of the date of plan confirmation. We conclude that the answer to this question lies in the reasoning of *Hamilton v. Lanning*, 130 S. Ct. 2464 (2010), which was decided after both the bankruptcy court's and the district court's decisions in the present case. In *Lanning*, the debtor had received a one-time buyout from her employer that had the effect of artificially inflating her monthly income for the six months prior to her bankruptcy filing. *See id.* at 2470. Aware that the debtor could not afford to make payments that were based on the amount of her income over the six-month period, the bankruptcy court took into account the one-time nature of the buyout in determining her projected disposable income. *See id.* at 2471. The Tenth Circuit Bankruptcy Appellate Panel and the Court of Appeals for the Tenth Circuit both affirmed on appeal. *See id.*

The Supreme Court granted certiorari and also affirmed. In so doing, the Court noted that the word "projected" should be given its ordinary meaning, *see id.*, and stated that "[w]hile a

projection takes past events into account, adjustments are often made based on other factors that may affect the final outcome," *id.* at 2472. The Court also recognized that prior to BAPCPA, bankruptcy courts "had discretion to account for known or virtually certain changes in the debtor's income," *id.*, and the Court stated that the amendments did not purport to make any change in that regard, *see id.* at 2473-74. The Court rejected the notion that the text of the amendments precluded consideration of changed circumstances. *See id.* at 2475. Indeed, the Court reasoned that ignoring such circumstances would contravene the language of § 1325 and produce "senseless results" in which a debtor whose income has been artificially inflated will be "den[ied] the protection of Chapter 13" and creditors whose debtors' income has been artificially depressed will be denied "payments that the debtor could easily make." *Id.* at 2475-76. For these reasons, the Court held "that when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation."[2] *Id.* at 2478.

The Debtor maintains that *Lanning* is distinguishable from her case because *Lanning* concerned a change in *income* whereas the present case concerns a change in *expenses*. But the Court's reasoning applies just the same. The *Lanning* Court based its holding on the term "projected disposable income," which is determined based on current monthly income and reasonably necessary expenses. Indeed, the Court plainly stated that its holding applied to "changes in the debtor's income or expenses." *Id.* For these same reasons, the Sixth Circuit, in a case after *Lanning* addressing facts materially identical to ours, reached the same conclusion we reach

---

[2]The Supreme Court reached a similar decision in *Ransom v. FIA Card Services, N.A.*, 131 S. Ct. 716 (2011). In *Ransom*, the Court decided that, under the formula for calculating monthly expenses, *see* 11 U.S.C.A. § 1325(b)(3)(A) (West Supp. 2011), a debtor who owns a car outright cannot claim an allowance for car ownership costs, where that allowance was for car-loan or car-lease payments. *See Ransom*, 131 S. Ct. at 721.

today. *See Darrohn v. Hildebrand (In re Darrohn)*, 615 F.3d 470, 477 (6th Cir. 2010); *see also In re Turner*, 574 F.3d 349, 356 (7th Cir. 2009) (reaching similar result prior to *Lanning*).

The Debtor maintains that even though it was known that she would not have to make the ATV payments during the plan period, her case did not present "exceptional" circumstances, such that the bankruptcy court would have discretion to take them into account. *Lanning*, 130 S. Ct. at 2471 ("[I]n exceptional cases, where significant changes in a debtor's financial circumstances are known or virtually certain, a bankruptcy court has discretion to make an appropriate adjustment."). Specifically, she maintains that the relatively small amount of the ATV payments were not sufficient to warrant the bankruptcy court's consideration of them. She alternatively argues that the bankruptcy court was not *required* to consider that she would not actually be making the ATV payments. We disagree with both arguments.

The amount of money at issue here is hardly inconsequential. In fact, it is quite significant in the context of this bankruptcy: the total amount that the Debtor sought to shield over the life of her Chapter 13 plan by deducting the ATV payments was $9,799.80, and removing that deduction would increase the Debtor's projected disposable income by almost two-thirds. Certainly under these circumstances, failing to account for such changes and thereby denying the unsecured creditors payments that the Debtor clearly could make would be just the sort of "senseless result[ ]" that the *Lanning* Court rejected. *Id.* at 2475. We therefore conclude that the bankruptcy court erred in ruling that the determination of the Debtor's projected disposable income would not take into account the Debtor's intention to surrender the ATVs.

### III.

In sum, we reverse the district court order affirming the bankruptcy court and remand for further proceedings consistent with this order.

*REVERSED AND REMANDED*