PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In re: BRYAN MATTHEW DAVIS;
CARLA DENISE BRACEY-DAVIS;
MARQUITA E. MOORE,

*Debtors.*

TIMOTHY P. BRANIGAN,

*Plaintiff-Appellant,*

and

No. 12-1184

TD BANK, N.A.,

*Plaintiff,*

v.

BRYAN MATTHEW DAVIS; CARLA
DENISE BRACEY-DAVIS; MARQUITA
E. MOORE,

*Defendants-Appellees.*

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, Senior District Judge.
(8:11-cv-01270-PJM; 8:11-cv-01718-PJM;
8:11-cv-01940-PJM)

Argued: December 4, 2012

Decided: May 10, 2013

Before NIEMEYER, KEENAN, and DIAZ, Circuit Judges.

Affirmed by published opinion. Judge Diaz wrote the majority opinion, in which Judge Niemeyer joined. Judge Keenan wrote a dissenting opinion.

## COUNSEL

**ARGUED:** Timothy P. Branigan, LAW OFFICE OF TIMOTHY P. BRANIGAN, Laurel, Maryland, for Appellant. Seth W. Diamond, THE DIAMOND LAW GROUP, LLC, Silver Spring, Maryland, for Appellees. **ON BRIEF:** Laura J. Margulies, LAURA MARGULIES & ASSOCIATES, LLC, Rockville, Maryland, for Appellees Bryan Matthew Davis and Carla Denise Bracey-Davis; Morgan William Fisher, LAWRENCE & FISHER PLLC, Annapolis, Maryland, for Appellee Marquita E. Moore.

## OPINION

DIAZ, Circuit Judge:

In this case, a Chapter 13 bankruptcy trustee, Timothy Branigan (the "Trustee"), challenges confirmation orders, entered by the bankruptcy court and affirmed by the district court, stripping off junior liens against debtors' residences. The Trustee argues that the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") creates a per se rule barring lien-stripping in so-called "Chapter 20" cases.[1] BAPCPA, however, does not bar the orders entered by the bankruptcy court, and the stripping off of valueless liens—that is a lien secured by collateral without a single penny of value to support it—is otherwise consistent with the Bankruptcy Code. We therefore affirm.

---

[1]"Chapter 20" is a colloquial reference to a Chapter 13 bankruptcy filed within four years of a Chapter 7 bankruptcy that concluded with a discharge.

## I.

We begin with a general overview of the relevant statutory framework, and then summarize the procedural history of the appeals.

## A.

Chapter 7 of the Bankruptcy Code governs liquidation of a bankruptcy estate and "offer[s] debtors limited relief in return for the relinquishment of their nonexempt assets for ratable distribution among creditors." *Collier on Bankruptcy* ¶ 1300.02 (16th ed. 2012). For an individual debtor, this process involves the collection, liquidation, and distribution of nonexempt property. *See id.* ¶ 700.01. The process culminates in a discharge, which eliminates personal liability for debts not excepted from discharge, but leaves intact *in rem* claims. *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991). In addition, the discharge serves as an injunction against efforts to collect discharged debts, unless the debtor has reaffirmed them. *See Collier on Bankruptcy* ¶ 700.05.

Chapter 13 of the Bankruptcy Code, "Adjustment of Debts of an Individual with Regular Income," on the other hand, is primarily focused on a plan of reorganization rather than liquidation. Unlike Chapter 7, Chapter 13 permits the debtor to "deal comprehensively with both unsecured and secured debts," particularly large secured claims. *Id.* ¶¶ 1300.01, 1300.02. In a Chapter 13 case, a debtor may propose a plan for paying creditors primarily out of the debtor's income. Thus, creditors receive ratable recoveries from future income, a protection not available to creditors in liquidation proceedings. The Chapter 13 plan "can provide for the payment of secured claims to permit the debtor to retain collateral for those claims and may provide for the cure of arrearages on long-term debts, such as home mortgages." *Id.* ¶ 1300.01. In addition, a Chapter 13 discharge excepts fewer types of debt than a Chapter 7 discharge. *Id.*

Congress enacted BAPCPA in 2005 "to correct perceived abuses of the bankruptcy system." *Milavetz, Gallop & Milavetz, P.A. v. United States*, 130 S. Ct. 1324, 1329 (2010). An overarching goal was to "help ensure that debtors who *can* pay creditors *do* pay them." *Ransom v. FIA Card Servs.*, 131 S. Ct. 716, 721 (2011). To that end, BAPCPA altered the Chapter 13 regime by adding

> new requirements to make payments to holders of domestic support obligations, requirements to file prepetition tax returns, changes in maximum plan length, protection for pension contributions and pension loan repayments, requirements for scheduling of the confirmation hearing, requirements for greater payments on many secured debts, new methods of calculating disposable income under section 1325(b), new requirements for preconfirmation payments, new requirements to obtain a discharge, including postpetition credit education in addition to the prepetition credit counseling briefing required for all debtors, new exceptions to the chapter 13 discharge, new limits on obtaining a chapter 13 discharge after a prior bankruptcy discharge and new provisions permitting plan modification to obtain health insurance.

*Collier on Bankruptcy* ¶ 1300.36[10] (footnotes omitted). Relevant to this appeal, BAPCPA provides additional protection for secured creditors. For example, creditors retain allowed secured claims until either payment of the underlying debt pursuant to nonbankruptcy law or discharge. Moreover, if a Chapter 13 case is dismissed or converted without completion of the bankruptcy plan, the holder of an allowed secured claim retains the lien to the extent recognized by applicable nonbankruptcy law. *See* 11 U.S.C. § 1325(a)(5)(B).

BAPCPA further provides that a debtor may not receive a Chapter 13 discharge within four years of filing a Chapter 7 petition that results in a discharge. 11 U.S.C. § 1328(f)(1).

Despite the discharge limitations imposed by BAPCPA, a Chapter 7 debtor may still wish to seek later relief under Chapter 13 "in order to cure a default through a plan, or simply to seek protection of the bankruptcy court and the automatic stay while paying debts in an orderly fashion through a plan." *Collier on Bankruptcy* ¶ 1328.06[1].

## B.

On June 7, 2008, Bryan Matthew Davis and Carla Denise Bracey-Davis filed a Chapter 7 bankruptcy petition with the United States Bankruptcy Court for the District of Maryland. At the time, they ran a large monthly deficit, and Mrs. Bracey-Davis was unemployed. The Davises sought to discharge their unsecured debt, strip down[2] liens on their primary residence and a rental property, and obtain a loan modification to address mortgage arrears on the properties. After learning that lien-stripping was prohibited under Chapter 7, they nevertheless chose to proceed with their Chapter 7 case because they were ineligible to convert to a Chapter 13 case. They hoped, however, that their mortgage lenders would approve their pending loan modification applications. On September 17, 2008, they received a Chapter 7 discharge, which absolved them of personal liability on nonexempt debts but left their mortgage debt unchanged.

Thereafter, the Davises obtained gainful employment. They still had no savings, however, and large mortgage arrears, which they could not bring current, accrued. On September 4, 2009, they filed a Chapter 13 petition to reorganize their debts, repay mortgage arrears and consumer debt, and strip off junior liens. At the time, their principal home was valued at $270,000, and was encumbered by a first-priority lien with

---

[2]"In a 'strip off' the entire lien is removed, whereas in a 'strip down' a lien is bifurcated into secured and unsecured claims with only the unsecured claim component being removed." *Johnson v. Asset Mgmt. Group*, 226 B.R. 364, 365 n.3 (D. Md. 1998).

a balance of $275,373.59, a second-priority lien with a balance of $115,138.58, and a third-priority lien with a balance of $117,603.31.

On March 30, 2011, Bankruptcy Judge Wendelin I. Lipp granted the Davises' Amended Motion to Avoid Lien, which sought to strip off the third-priority lien on the Davises' home upon completion of the Chapter 13 plan. Judge Lipp reasoned that BAPCPA did not create a per se rule against lien-stripping in the Chapter 20 context. The court proceeded to consider, as it always does in any Chapter 13 case, whether the debtors filed their petition in good faith. Finding that the Davises had acted in good faith, Judge Lipp entered an order stripping off the third-priority lien on the Davises' home. J.A. 65-66. Judge Lipp subsequently entered orders stripping off the second and third liens on the Davises' rental property and confirming the Davises' bankruptcy plan. J.A. 67-72. Both the Trustee and the holder of the third-priority lien against the Davises' home, TD Bank, N.A., appealed to the district court, which affirmed.

## C.

Marquita Moore filed a Chapter 7 petition on February 1, 2010, for which she received a discharge on October 20, 2010. One week later, Moore filed a Chapter 13 petition. Moore sought to pay an Internal Revenue Service priority claim and strip off a second lien, which had no value, on her principal home. The Trustee never contended that Moore filed her Chapter 13 petition in bad faith. On January 5, 2011, the bankruptcy court granted Moore's motion to strip off the second lien. Subsequently, the bankruptcy court confirmed Moore's plan and adopted Judge Lipp's rationale to overrule the Trustee's objection to the lien-stripping component of the confirmation order. The Trustee appealed, and the district court affirmed.[3]

---

[3]The district court consolidated these cases before affirming both without a written opinion.

We have jurisdiction to consider these appeals under 28 U.S.C. § 158(d).

## II.

The question presented is whether BAPCPA precludes the stripping off of valueless liens by Chapter 20 debtors ineligible for a discharge. In a bankruptcy appeal, "we review the district court['s] decision de novo, effectively standing in its shoes to consider directly the findings of fact and conclusions of law by the bankruptcy court." *Morris v. Quigley (In re Quigley)*, 673 F.3d 269, 271 (4th Cir. 2012) (internal quotations omitted). "[W]e review legal conclusions by the bankruptcy court de novo and may overturn its factual determinations only upon a showing of clear error." *Id.* (internal quotations omitted).

## A.

Before reaching the issue raised by the Trustee, we consider the threshold question of whether a bankruptcy court may strip off a valueless lien in a typical Chapter 13 proceeding. The answer, in the view of those circuits to have considered the question, is that a bankruptcy court may grant such relief. *See Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220 (9th Cir. 2002); *Lane v. W. Interstate Bancorp (In re Lane)*, 280 F.3d 663 (6th Cir. 2002); *Pond v. Farm Specialist Realty (In re Pond)*, 252 F.3d 122 (2d Cir. 2001); *Tanner v. FirstPlus Fin. (In re Tanner)*, 217 F.3d 1357 (11th Cir. 2000); *Bartee v. Tara Colony Homeowners Ass'n (In re Bartee)*, 212 F.3d 277 (5th Cir. 2000); *McDonald v. Master Fin. (In re McDonald)*, 205 F.3d 606 (3d Cir. 2000). We too have affirmed, albeit in unpublished opinions, the stripping off of valueless liens against principal residences in Chapter 13 cases. *See First Mariner Bank v. Johnson (In re Johnson)*, 407 F. App'x 713 (4th Cir. 2011); *Suntrust Bank v. Millard (In re Millard)*, 404 F. App'x 804 (4th Cir. 2010).

To exercise this authority, bankruptcy courts rely on sections 506 and 1322(b) of the Bankruptcy Code.[4] First, courts apply the valuation procedure in section 506(a):

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

In other words, a claim's status as secured or unsecured depends on the value of the collateral. Next, courts look to section 1322(b)(2), which provides that, subject to certain exceptions not relevant here, a Chapter 13 bankruptcy plan may

> modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.]

Applying this framework, a completely valueless lien is classified as an unsecured claim under section 506(a). Only then does a bankruptcy court consider the rights of lienholders under section 1322, which affords protection to holders of secured claims against principal residences. Section 1322, however, expressly permits modification of the rights of unsecured creditors. The end result is that section 506(a), which classifies valueless liens as unsecured claims, operates with section 1322(b)(2) to permit a bankruptcy court, in a Chapter 13 case, to strip off a lien against a primary residence with no

---

[4]All section references, unless otherwise indicated, are to the Bankruptcy Code, Title 11 of the United States Code.

value. *See, e.g.*, *Zimmer*, 313 F.3d at 1226-27; *Lane*, 280 F.3d at 668.

We recognize that the Supreme Court has interpreted section 1322(b)(2) as precluding a "strip down" of a partially secured lien against a principal residence in Chapter 13. That is, a debtor may not reduce an underwater mortgage to the value of the principal residence because partially secured lienholders are "holders of secured claims" protected against lien modification. *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 331-32 (1993). *Nobelman* notwithstanding, however, courts have generally permitted a "strip off" of completely valueless liens in Chapter 13 cases because, unlike the lienholder in *Nobelman*, holders of such liens are not "holders of secured claims" and, therefore, are not entitled to the protection of section 1322(b)(2).

We see no reason to depart from the conclusion of our sister circuits, as well as our own unpublished dispositions, on this issue. Accordingly, we hold that the Bankruptcy Code permits the stripping off of valueless liens in Chapter 13 proceedings.

B.

We are left with the question raised in this appeal: whether the 2005 enactment of BAPCPA precludes the stripping off of valueless liens by Chapter 20 debtors.

Under BAPCPA, after filing for Chapter 7 relief and receiving a discharge, a debtor is ineligible for a discharge in a Chapter 13 proceeding for four years. 11 U.S.C. § 1328(f)(1). As previously noted, following a Chapter 7 discharge, creditors may not seek a personal judgment against the debtor but may pursue recovery against the property securing the debt.

Notwithstanding the bar on discharges imposed by BAPCPA, we have held that a debtor may still take advantage of

the protections offered by Chapter 13 short of a discharge. *See Branigan v. Bateman (In re Bateman)*, 515 F.3d 272, 283 (4th Cir. 2008). In doing so, we said that "it is the ability to reorganize one's financial life and pay off debts, not the ability to receive a discharge, that is the debtor's 'holy grail.'" *Id.* We recognized that a debtor might pursue this course "to cure a mortgage, deal with other secured debts, or simply pay debts under a plan with the protection of the automatic stay." *Id.* (internal quotations omitted).

Bankruptcy courts are split on whether a debtor may strip off liens in a Chapter 20 case. *Compare In re Fisette*, 455 B.R. 177 (BAP 8th Cir. 2011) (concluding a Chapter 20 debtor may strip off liens), *and In re Dang*, 467 B.R. 227 (Bankr. M.D. Fla. 2012) (same), *and In re Okosisi*, 451 B.R. 90 (Bankr. D. Nev. 2011) (same), *and In re Tran*, 431 B.R. 230, 237 (Bankr. N.D. Cal. 2010) (same), *with In re Gerardin*, 447 B.R. 342 (Bankr. S.D. Fla. 2011) (holding that Chapter 20 debtors could not permanently strip off wholly unsecured junior liens), *and In re Victorio*, 454 B.R. 759 (Bankr. S.D. Cal. 2011) (same), *and In re Fenn*, 428 B.R. 494 (Bankr. N.D. Ill. 2010) (same), *and In re Jarvis*, 390 B.R. 600 (Bankr. C.D. Ill. 2008) (same).

The Trustee contends that lien-stripping is contingent on a debtor's ability to receive a Chapter 13 discharge. In support of this proposition, the Trustee points first to section 1325(a)(5)(B)(i)(I) of the Bankruptcy Code, which provides that a holder of a secured lien retains the lien until either the underlying debt is paid or there is a discharge. Because the debtors here are not eligible for a discharge, the Trustee contends that the liens must survive until paid in full. Next, the Trustee relies on section 1325(a)(5)(B)(i)(II)—which reinstates liens if the case is dismissed or converted without completion of the plan—for the proposition that Congress intended to preserve liens absent a discharge. *See also* 11 U.S.C. §§ 349(b)(1)(C) (providing that any lien stripped under section 506(d) is reinstated upon dismissal),

348(f)(1)(C)(i) (providing that a creditor holding security shall continue to be secured by that security unless the claims have been paid in full as of the date of conversion, notwithstanding any valuation). Finally, the Trustee contends that, under section 524, a discharge operates as an injunction against any action to enforce a debt. Absent this injunction, which is precluded in the Chapter 20 context by section 1328(f), the Trustee says there is no mechanism to enforce the stripping off of a lien.

The Trustee also urges that Supreme Court precedent reinforces his statutory argument. Specifically, the Trustee directs our attention to *Dewsnup v. Timm*, 502 U.S. 410 (1992), where, says the Trustee, petitioners were not allowed, in a Chapter 7 case, to strip down junior liens on claims that had been fully allowed pursuant to section 502, despite the fact that there was no equity in the collateral.

In *Dewsnup*, the Court considered whether section 506(d) (providing that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void") permits a Chapter 7 debtor to strip down a creditor's lien to the value of the collateral. *See* 502 U.S. at 411-12. The Court held that "§ 506(d) does not allow petitioner to 'strip down' [a creditor's] lien, because [the creditor's] claim is secured by a lien and has been fully allowed." *Id.* at 417. The Court noted that section 506 "and its relationship to other provisions of [the Bankruptcy] Code do embrace some ambiguities." *Id.* at 416. Given that ambiguity, the Court declined to give "allowed secured claim" the same meaning in section 506(d) as in section 506(a) and concluded that section 506 by itself is insufficient to effectuate lien-stripping.

The Trustee contends that the debtors are attempting an end run around *Dewsnup*'s prohibition of Chapter 7 lien-stripping and that construing sections 1325(a)(5) and 1328(f) to bar lien-stripping by Chapter 20 debtors is consistent with BAPCPA's goal of rebalancing the scales in favor of creditors.

The debtors respond that because BAPCPA left intact the operative lien-stripping provisions of the Code, Congress did not intend to alter the ability of bankruptcy courts to enter lien-stripping orders in Chapter 13 cases. And this is so regardless of the availability of a discharge. A discharge, the debtors say, extinguishes only *in personam* liability. *See Johnson*, 501 U.S. at 84 ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*."). Because the debtors here have already discharged their *in personam* liability in the prior Chapter 7 proceedings, they have no need for a discharge with respect to the liens. The debtors also say that once the bankruptcy court has entered an order stripping off liens, no provision of the Bankruptcy Code reinstates the liens once the plan is completed and the case closed. Thus, "the provisions of the plan become permanent [upon completion of the plan], and [a lien-stripping order] is, similarly, permanent." *Okosisi*, 451 B.R. at 100.

The debtors also contend that the provisions relied on by the Trustee are inapplicable. Specifically, section 1325(a)(5), which provides generally for the treatment of *allowed* secured claims, comes into play only after the claims have been valued under section 506(a), and is therefore irrelevant to the unsecured claims at issue here. Similarly, the debtors say that the Trustee improperly relies on other provisions of the Code that apply when a case is dismissed or converted without completion of the plan, such as sections 1325(a)(5)(B)(i)(II), 349(b)(1)(C), and 348(f)(1)(C)(i). In a successful Chapter 20 case, on the other hand, the plan is completed, and the case is closed administratively without dismissal or conversion.

## C.

Although the Trustee's arguments are not insubstantial, we conclude that the Bankruptcy Code permits the result advanced by the debtors. The starting point for our analysis

is *Bateman*, where we held that a Chapter 13 debtor need not be eligible for a discharge in order to take advantage of the protections afforded by Chapter 13. 515 F.3d at 283. Therefore, if the Bankruptcy Code provides a mechanism for stripping off worthless liens absent a discharge, a debtor may avail himself of that relief.

We are satisfied that the Bankruptcy Code does provide such a mechanism. To begin with, the debtors' junior liens in this case are worthless and, therefore, unsecured claims under section 506(a). While *Dewsnup* admittedly requires that section 506 operate in tandem with another statutory provision to effectuate lien-stripping, section 506 has always operated in tandem with section 1322(b) to strip liens in Chapter 13 cases. BAPCPA did not amend sections 506 or 1322(b), so the analysis permitting lien-stripping in Chapter 20 cases is no different than that in any other Chapter 13 case.

Courts concluding to the contrary rely on section 1325(a)(5). *See, e.g.*, *Gerardin*, 447 B.R. at 346-48. But this provision applies only to an "allowed secured claim." We agree with the debtors that a court must first value the claim under section 506(a) before proceeding further. Because the liens in these cases have no value, they are wholly unsecured claims, which leaves no role in the analysis for section 1325(a)(5).

Relying on *Gerardin*, among other cases, the Trustee argues that any lien secured by real property, even if worthless, is a secured claim for purposes of section 1325. We, however, cannot square *Gerardin* and similar cases with the Supreme Court's opinion in *Nobelman*, which valued the claim in that case under section 506 before analyzing whether section 1322 barred its modification. *See* 508 U.S. at 328. If, as the Trustee insists, it were not necessary to first value the claim pursuant to section 506(a), the analysis in *Nobelman* would be superfluous. *See id.* Rather, the Court could have simply held that, because the lien was secured by a primary

residence, it falls within the anti-modification provision of section 1322(b), regardless of the value of the collateral.

We do not take lightly the Trustee's assertion that permitting lien-stripping in Chapter 20 cases creates an end run around *Dewsnup*'s bar to such relief in Chapter 7 cases. But the Trustee's premise ignores the equally reasonable view that Congress intended to leave intact the normal Chapter 13 lien-stripping regime where a debtor could otherwise satisfy the requirements for filing a Chapter 20 case. In that regard, the law already provides a mechanism for preventing abuse of the bankruptcy process without the creation of a per se rule against lien-stripping, as bankruptcy courts are bound to carefully scrutinize filings for good faith and dismiss cases where the debtor attempts to use a Chapter 20 procedure solely to strip off a lien. Likewise, creditors are also protected by section 349(b)(1)(C), which provides that a lien springs back if the case is dismissed.

Finally, the unavailability of a discharge in the Chapter 20 context is not determinative. It bears emphasizing that a bankruptcy discharge alters *in personam* rights, precluding an action against the debtor for personal liability. *Johnson*, 501 U.S. at 84. In contrast, the lien-stripping orders at issue here alter *in rem* liability where the creditor's lien has no value. For that reason we are persuaded that, upon completion of the plan, its provisions—including any orders stripping off value-less liens—become permanent, even in the absence of a discharge.

Our good colleague in dissent says that our holding creates a situation where unsecured creditors are treated more favorably than secured creditors. However, this conclusion does not acknowledge the distinction between *in rem* and *in personam* liability. While the dissent correctly notes that an unsecured creditor's *in personam* claim survives a Chapter 20 proceeding because of the absence of a discharge, the same is true for any *in personam* claim a secured creditor may have.

All *in personam* claims survive a Chapter 20 proceeding, and creditors are treated equally in that respect. We simply hold today that the bankruptcy court may strip the *in rem* component of a valueless lien. It is an apples-to-oranges comparison to posit that unsecured creditors, who have no *in rem* rights at all, are treated more favorably because a limited class of secured creditors are stripped of their *in rem* claims. Our dissenting colleague also overlooks the bankruptcy court's duty to dismiss Chapter 20 cases filed in bad faith, which we think alleviates much of the concern with lien stripping in this context.

### III.

In sum, although BAPCPA clearly tipped the bankruptcy scales back in the direction of creditors, we find nothing in the Act to suggest that Congress intended to bar lien-stripping of worthless liens in Chapter 20 proceedings. This, we conclude, is the most sensible reading of a complex statutory scheme that admittedly "abounds with arbitrary distinctions." *Lane*, 280 F.3d at 669. We therefore affirm the judgment of the district court.

*AFFIRMED*

BARBARA MILANO KEENAN, Circuit Judge, dissenting:

I respectfully dissent. Under the majority's holding, a creditor whose rights are secured by real property with no present value to support the lien, is treated less favorably than a wholly unsecured creditor. I would conclude that this result is anomalous and is not permitted upon application of the BAPCPA amendments.

In my view, while the BAPCPA amendments to 11 U.S.C. § 1325(a)(5)(B)(i) and § 1328(f)[1] do not alter the statutory

---

[1]*See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23, 80, 87.

provisions allowing a typical Chapter 13 debtor to strip off a secondary mortgage secured by property with no present value to support the lien (valueless junior mortgage), those amendments prevent a Chapter 20 debtor from eliminating a valueless junior mortgage. In particular, Section 1325(a)(5)(B)(i) operates to prohibit such Chapter 20 debtors, who file a Chapter 13 case within four years of filing a Chapter 7 case that resulted in a discharge, from entirely and permanently eliminating a valueless junior mortgage.

The provisions that permit a typical Chapter 13 debtor to strip off a valueless junior mortgage are 11 U.S.C. § 506(a), which allows bifurcation of a claim secured by property into secured and unsecured components based on value, and 11 U.S.C. § 1322(b)(2), which permits modification of rights of creditors holding certain secured claims and all unsecured claims. However, under Section 1325(a)(5)(B)(i), a Chapter 13 plan must provide that a holder of an "allowed secured claim" will retain its lien until the earlier of (1) full payment of the debt as determined under non-bankruptcy law or (2) discharge.

The majority determines that Section 1325(a)(5) is inapplicable, because the claims at issue are not "allowed secured claims" based on the valuation provision of Section 506(a). In my view, this is a flawed interpretation of the term "allowed secured claim." The term "allowed secured claim" in Section 1325(a)(5) is not defined by, or predicated on, an application of Section 506(a). *In re: Ballard*, 526 F.3d 634, 640-41 (10th Cir. 2008) (discussing application of Section 1325(a)(5) in the context whether the surrender of a motor vehicle under Section 1325(a)(5)(C) fully satisfied the claim). Instead, Section 506(a) provides a method for the judicial valuation of an allowed secured claim, without altering the secured status of a creditor. *See In re Price*, 562 F.3d 618, 623 (4th Cir. 2009); *see also Dewsnup v. Timm*, 502 U.S. 410, 417 (1992) (holding that the valuation permitted by § 506(a) does not determine the meaning of "allowed secured claim" in § 506(d)). There-

fore, the term "allowed secured claim" merely describes (1) a claim, which is a "right to payment" or a "right to an equitable remedy" as defined in 11 U.S.C. § 101(5); (2) that is "allowed," meaning "not objected to by an interested party" under 11 U.S.C. § 502(a); and (3) that is "secured."

The claims at issue in the present cases are allowed and are secured by the debtors' real property. The claims remained secured by the debtors' real property even after the debtors received Chapter 7 discharges removing the personal liability component of their debts. *See Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) ("A creditor's right to foreclose on the mortgage survives or passes through the bankruptcy") (citing 11 U.S.C. § 522(c)(2)). And, as the majority acknowledges, the in rem portion of the claims survived the debtors' Chapter 7 discharges. *See id.*

Because the present debtors' Chapter 13 plans must comply with Section 1325(a)(5), the junior mortgagee creditors in these cases have "allowed secured claims" against the debtors' bankruptcy estates. Under Section 1325(a)(5)(B)(i),[2] the debtors' Chapter 13 plans must provide that the junior mortgagee creditors retain their liens on the properties until the earlier of (1) full payment by the debtors in the context of non-bankruptcy law, or (2) discharge. Here, the debtors have not fully paid their outstanding debts to the junior mortgagee creditors, and the debtors are prevented by Section 1328(f) from obtaining a discharge in their Chapter 13 cases, given their recent Chapter 7 discharges. Therefore, the provisions in Section 1325(a)(5)(B)(i) and Section 1328(f) together prohibit Chapter 20 debtors from stripping off their valueless junior mortgages and require retention of the liens of the junior mortgagee creditors.

[2]Subsections 1325(a)(5)(A) and (C) are not relevant in the present cases because it is undisputed, with regard to paragraph (A), that the holders of the claims have not "accepted" the plans, and, with regard to paragraph (C), that the debtors have not surrendered the property securing the claims.

Contrary to the majority's contention, the Supreme Court's analysis in *Nobelman v. American Savings Bank*, 508 U.S. 324 (1993), supports, rather than impedes, the above interpretation of the term "allowed secured claim" in Section 1325(a)(5). *See Ante* at 13-14. In its opinion in *Nobelman*, the Court focused on the interplay between Section 506(a) and Section 1322(b)(2). The Court held that the valuation provided for in Section 506(a) did not automatically adjust downward the amount of a mortgage for treatment in a debtor's Chapter 13 plan, because Section 1322(b)(2) otherwise protected the bank's rights, which were secured by an interest in the debtor's principal residence. *Id.* at 328-29. The Court held that, therefore, the amount of the debt owed to the bank was unaffected by the earlier valuation of that claim under Section 506(a). *Id.*

In its analysis, the Court explained that although Section 506(a) provides for "a judicial valuation of the collateral to determine the status of the bank's secured claim," such valuation did not affect a secured creditor whose rights otherwise were protected by a different statute, in that case, Section 1322(b)(2). *Id.* Employing this analysis, I would conclude that, like the creditor in *Nobelman*, the rights of the creditors in the present cases are not altered by the valuation process of Section 506(a) for allowed secured claims, because Section 1325(a)(5)(B)(i) otherwise protects the rights of such holders by providing that they retain their lien until the earlier of "payment of the underlying debt as determined under non-bankruptcy law" or "discharge" under Section 1328. 11 U.S.C. § 1325(a)(5)(B)(i)(I)(aa), (bb). Thus, the liens of the creditors in the present cases are fully protected by Section 1325(a)(5)(B)(i), consistent with the definition of the term "allowed secured claim" applied by the Supreme Court in *Dewsnup*. *See* 502 U.S. at 417.

Congress enacted BAPCPA "to correct perceived abuses of the bankruptcy system." *Ransom v. FIA Card Servs., N.A.*, 131 S.Ct. 716 (2011) (addressing the "means test" adopted to

"ensure that debtors who can pay creditors do pay them")(emphasis omitted). The BAPCPA addition of Section 1328(f) curtails the relief available to serial-filing debtors. *See In re Victorio*, 454 B.R. 759, 779 (Bankr. S.D. Cal. 2011), *aff'd*, 470 B.R. 545 (S.D. Cal. 2012).

Additionally, Section 306 of the BAPCPA amendments, which added subsection (i)(I) to Section 1325(a)(5)(B), was entitled "Giving Secured Creditors Fair Treatment in Chapter 13." Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23, 80. The legislative history of this section demonstrates that Congress included these additions "to require – as a condition of confirmation – that a chapter 13 plan provide that a secured creditor retain its statutory lien until the earlier of when the underlying debt is paid or the debtor receives a discharge." H. R. Rep. No. 109-31, pt. 1 at 71-72 (2005).

The above construction of Section 1325(a)(5) and Section 1328(f), which prohibits Chapter 20 debtors from stripping off valueless junior mortgages, also makes practical sense when considering the effect of a Chapter 13 plan that does not conclude with a discharge. As this Court has explained, even though a Chapter 20 debtor is prohibited from obtaining a discharge in his Chapter 13 case under § 1328(f), he may file a Chapter 13 case and take advantage of the other protections available. *Branigan v. Bateman*, 515 F.3d 272, 283 (4th Cir. 2008) (explaining protections). However, upon completion of the Chapter 13 plan, when there is no accompanying discharge, the debtor's status with his creditors is returned to the status quo ante. *See Victorio v. Billingslea*, 470 B.R. 545, 556 (S.D. Cal. 2012) (citing *In re Victorio*, 454 B.R. at 779). As a result, any personal liability for the remaining balances on unsecured debt, such as debt accumulated on a personal credit card, is not eliminated by discharge and those unsecured creditors can seek payment on the outstanding debt upon plan completion, outside of bankruptcy. *See id.* In contrast, under the majority's holding, when there is no discharge upon com-

pletion of a Chapter 13 plan the creditors with security interests in real property are not returned to the status quo ante and cannot pursue in rem claims at the conclusion of the Chapter 13 plan.

While the majority suggests that the comparison between secured creditors and unsecured creditors in this context is akin to comparing apples and oranges, that is precisely the point. These types of creditors are distinct and are not treated equally under the Bankruptcy Code. The distinguishing factor between secured and unsecured creditors is that secured creditors have two methods of recouping debt: in personam liability against the debtor and in rem liability against the collateral. The majority's position would equalize the status of these creditors by eliminating the secured creditor's in rem claim.

Such a result turns on its head the basic bankruptcy principle that secured creditors are treated more favorably than unsecured creditors. *See In re Gerardin*, 447 B.R. 342, 351-52 (Bankr. S.D. Fla. 2011) (citing *Nobelman*, 508 U.S. at 329 and *Dewsnup*, 502 U.S. at 417). The result reached by the majority also undermines the Supreme Court's repeated respect for the bargained-for rights of mortgagors and their mortgagees as set forth in security instruments. *See Nobelman*, 508 U.S. at 329; *Dewsnup*, 502 U.S. at 417. Therefore, I would hold that the debtors' Chapter 13 plans were required to comply with the terms of Section 1325(a)(5), and that the debtors were not permitted to strip off the valueless junior mortgages. Accordingly, I would reverse the district court's judgment approving the Chapter 13 confirmation orders.