**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-1971

EDWIN MICHAEL BURKHART; TERESA STEIN BURKHART, f/k/a Teresa S. Barham,

    Debtors − Appellants,

   v.

NANCY SPENCER GRIGSBY,

    Trustee − Appellee,

   and

COMMUNITY BANK OF TRI-COUNTY,

    Defendant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Peter J. Messitte, Senior District Judge. (8:14-cv-00315-PJM)

Argued: October 24, 2017        Decided: March 29, 2018

Before KING and DIAZ, Circuit Judges, and SHEDD, Senior Circuit Judge.

Reversed and remanded by published opinion. Judge Diaz wrote the opinion in which Judge King and Senior Judge Shedd joined.

**ARGUED:** John Douglas Burns, BURNS LAW FIRM, LLC, Greenbelt, Maryland, for Appellants. Rebecca Anne Herr, OFFICE OF CHAPTER 13 TRUSTEE, Annapolis,

Maryland, for Appellee.  **ON BRIEF:**  Mary Park McLean, OFFICE OF CHAPTER 13 TRUSTEE, Bowie, Maryland, for Appellee.

————————————

DIAZ, Circuit Judge:

In this case, we consider whether a bankruptcy court may strip off valueless liens on a Chapter 13 debtor's principal residence when no proof of claims have been filed. The trustee opposed the debtors' request to strip the liens, arguing that 11 U.S.C. § 506(d)[1] expressly prohibits lien avoidance where no proof of claims have been filed. The bankruptcy court agreed and refused to strip the liens. The district court affirmed, holding that even if § 506(d) did not bar the debtors' effort to strip the liens, the text of § 506(a) still requires a proof of claim to be filed before a lien can be stripped.

We disagree and reverse. There is no question that the liens at issue are entirely without value making the creditor the holder of an unsecured claim under § 1322(b). Accordingly, the liens may be stripped regardless of whether a proof of claim has been filed.

I.

Before turning to the merits, we discuss the relevant provisions of the bankruptcy Code and the factual and procedural history of this case.

A.

The Bankruptcy Code contains two chapters aimed at individual debtors. Under Chapter 7, a debtor's estate is liquidated to pay creditors, after which he can obtain a discharge, eliminating personal liability for nonexempt debts. §§ 726–727. Chapter 7 thus

---

[1] All section references, unless otherwise indicated, are to Title 11 of the United States Code.

"allows a debtor to make a clean break from his financial past, but at a steep price: prompt liquidation of the debtor's assets." *Harris v. Viegelahn*, 135 S. Ct. 1829, 1835 (2015). By contrast, Chapter 13 operates as a "reorganization," allowing a debtor to keep certain assets by promising to repay creditors from future income streams over a three to five year period. *See id.*; §§ 1306(b), 1322, 1327(b). However, only those debtors with a regular income sufficiently stable to enable payments under a plan may seek relief under Chapter 13. §§ 101(30), 109(e).

Despite their differences, both chapters are governed by the same subchapter on creditors and claims, found at §§ 501–511. *See* § 103(a). Among other things, this subchapter details the formal process for filing a proof of claim and claim allowance.[2] *See* §§ 501–503. It also provides the mechanism for determining a claim's secured status and instructs courts to divide allowed claims into their "secured" and "unsecured" components. § 506(a).[3]

---

[2] Section 501 provides that a creditor may file a proof of claim, but if the creditor fails to do so, then the debtor or trustee may file the claim. § 501(a), (c). Section 502 states that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." § 502(a).

[3] The relevant portions of § 506 state in full:

Under the Code, a claim's secured status depends on the value of the underlying collateral, not the mere existence of a security interest. *Id.* Thus, a creditor with a junior lien on property entirely consumed by senior security interests would hold an unsecured claim. *Collier on Bankruptcy* ¶ 506.03[4] (16th ed. 2017). Lien avoidance is the process by which a debtor seeks to strip off or strip down such a "valueless" lien. *In re Alvarez*, 733 F.3d 136, 138 (4th Cir. 2013). In bankruptcy parlance, a "strip off" refers to removing a lien entirely, while a "strip down" reduces the lien to its secured value. *In re Scantling*, 754 F.3d 1323, 1326–27 (11th Cir. 2014).

The Supreme Court has held that Chapter 7 does not permit a debtor to strip off a valueless lien. *See Dewsnup v. Timm*, 502 U.S. 410, 417 (1992) (holding that § 506(d)

---

(a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest. . . .

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

does not permit a Chapter 7 debtor to strip down a partially unsecured lien); *Bank of America v. Caulkett*, 135 S. Ct. 1995, 1999 (2015) (extending *Dewsnup* to completely valueless liens). The Court has also prohibited strip downs in Chapter 13 proceedings but has not addressed whether a plan may nevertheless strip off an entirely underwater lien. *See Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 332 (1993) (barring strip downs under Chapter 13). We, however, have held, "consistent with every other circuit to have considered the question, that in a typical Chapter 13 proceeding, a bankruptcy court has the authority to strip off a completely valueless lien on a debtor's primary residence, thereby eliminating a lienholder's *in rem* rights against the collateral property." *Alvarez*, 733 F.3d at 138.

This unique result in Chapter 13 is explained by the powers granted to bankruptcy plans under § 1322(b), including the ability to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." § 1322(b)(2).

The limitation on modifying claims secured by a "security interest in real property" is referred to as § 1322(b)(2)'s antimodification clause. *See In re Bartee*, 212 F.3d 277, 287 (5th Cir. 2000). In line with the Supreme Court's reasoning in *Nobelman*, courts have understood a partially underwater lien as falling within the antimodification clause and thus not subject to lien avoidance. *See In re Davis*, 716 F.3d 331, 335 (4th Cir. 2013) (surveying the approach of other circuits). By contrast, a nominally secured creditor with an entirely

6

underwater lien does not fall within the antimodification clause and is viewed as holding an unsecured claim. *Id.* at 335–36; *In re McDonald*, 205 F.3d 606, 612 (3d Cir. 2000).

B.

On September 14, 2012, Michael and Teresa Burkhart filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the District of Maryland. At the time, the Burkharts' principal residence was encumbered by four liens. In order of seniority these were: a $609,500 lien held by Chase Bank, a $49,411.80 lien held by Tri-County Bank, a $78,289.11 lien also held by Tri-County, and a $105,995.75 lien held by PNC Bank. Chase Bank and PNC Bank filed proofs of claim with the bankruptcy court. Tri-County did not.

The Burkharts commenced an adversary proceeding to avoid the liens held by PNC and Tri-County. Their home was valued at $435,000, making the three junior liens unsecured and the senior lien only partially secured. The bankruptcy court entered a default judgment against the two banks, finding the liens completely underwater, and stripped PNC's lien. But the court refused to strip the liens held by Tri-County on the ground that § 506(d)(2) prohibits lien avoidance where no proof of claims have been filed.

The Burkharts appealed to the district court, which also refused to strip the liens. The district court agreed with the bankruptcy court that in a Chapter 13 proceeding, a strip off cannot occur without application of § 506(d), but that §506(d)(2) barred a lien from being voided when that lien is not an "allowed secured claim" due simply to the failure to file a proof of claim. The court added that it would reach the same result even if it accepted the debtors' contention that a lien strip can occur by application of § 1322(b)(2) alone. In

the court's view, it could not turn to § 1322(b)(2) until after the claim had been valued under § 506(a), which in turn cannot occur until that claim has been filed and "allowed." *See Burkhart v. Cmty. Bank of Tri-Cty.*, No. PJM 14-315, 2016 WL 4013917, at *4 (D. Md. July 27, 2016).

This appeal followed.

## II.

We review the district court's judgment affirming the bankruptcy court order de novo. *Morris v. Quigley*, 673 F.3d 269, 271 (4th Cir. 2012). Since both banks failed to respond to the Burkharts' complaint, the debtor's well-pleaded facts are admitted as true. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001).

Accordingly, we need only address questions of law on appeal. Specifically, we must decide whether a Chapter 13 debtor can strip off a completely unsecured junior lien when no proof of claim has been filed. In the process, we must answer two other questions. First, what role, if any, does § 506(d) play in a Chapter 13 lien strip? Second, is Tri-County the holder of an "unsecured claim" under § 1322(b)? We address each issue in turn.

## A.

Our past decisions make clear that the power to effectuate a lien strip in a Chapter 13 case stems from §§ 506(a) and 1322(b). *See Davis*, 716 F.3d at 335 ("The end result is that section 506(a), which classifies valueless liens as unsecured claims, operates with section 1322(b)(2) to permit a bankruptcy court, in a Chapter 13 case, to strip off a lien against a primary residence with no value."); *Alvarez*, 733 F.3d at 138 n.2 ("[T]he

8

statutory basis for a strip off is found in 11 U.S.C. §§ 506(a) and 1322(b), without application of § 506(d).").

Section 506(d), on the other hand, voids liens "on the basis of whether the underlying claim is allowed or disallowed under section 502." *Collier on Bankruptcy* ¶ 506.06[1][a]. The provision therefore implements the bankruptcy court's broad power over claim allowance—permitting the court to remove a lien after it has extinguished the underlying debt. *See* H.R. Rep. No. 95–595, at \*357 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6313 ("Subsection (d) permits liens to pass through the bankruptcy case unaffected. However, if . . . the claim is not allowed, then the lien is void to the extent that the claim is not allowed.").

The Supreme Court made this point clear in *Dewsnup* when it rejected the Chapter 7 debtor's argument that § 506(d) can be used to strip down a partially secured lien. 502 U.S. at 417. The Court explained that the applicability of § 506(d) depends on whether a claim is an "*allowed*" secured claim, agreeing that this reading "gives the provision the simple and sensible function of voiding a lien whenever a claim secured by the lien itself has not been allowed." *Id.* at 415–16; *accord Caulkett*, 135 S. Ct. at 1999 ("Under this definition, § 506(d)'s function is reduced to voiding a lien whenever a claim secured by the lien itself has not been allowed.") (internal quotation marks omitted). Thus the provision "ensures that the Code's determination not to allow the underlying claim against the debtor personally is given full effect by preventing its assertion against the debtor's property." *Dewsnup*, 502 U.S. at 416.

9

Here though, the Burkharts are not challenging the validity of the underlying debt, say by arguing that it was the product of fraud or duress. Rather, they argue that Tri-County's otherwise valid debt is now unsecured because the value of the senior security interest (the Chase Bank lien) is far greater than the value of the Burkharts' home. As such, they look (we think correctly) to "§ 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim" and modification of the "'rights' the bank enjoys as a mortgagee" under § 1322(b)(2). *Nobelman*, 508 U.S. at 329.

B.

Tri-County also holds an unsecured claim for purposes of § 1322(b) despite never filing a formal proof of claim. In reaching a contrary result, the district court concluded that the filing of a formal proof of claim is a prerequisite to valuing that claim under § 506(a). However, this conclusion confuses the claim allowance and lien avoidance process and turns a blind eye to economic reality. In our view, the language and purpose of § 1322(b) compels the opposite result.

Section 1322(b)(2) permits a plan to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." § 1322(b)(2). As the Supreme Court explained in *Nobelman*, the critical focus here is on "rights." 508 U.S. at 328. Thus, § 1322(b) "does not state that a plan may modify 'claims' or that the plan may not modify 'a claim secured only by' a home mortgage. Rather, it focuses on the modification of the '*rights of holders*' of such claims." *Id.* at 328. By contrast, § 506(a) speaks only of allowed claims.

10

Nor has a Chapter 13 plan's power to modify rights ever been restricted to the universe of allowed claims. To the contrary, bankruptcy proceedings routinely modify a non-participating creditor's rights, for example via § 362's automatic stay provision, or perhaps most saliently, by extinguishing the debtor's personal liability on the debt following plan confirmation pursuant to § 1327(c). We see no reason for a different result when it comes to avoiding an entirely unsecured lien.[4]

And while we have said that courts should look to § 506(a) to value collateral before proceeding to § 1322(b), *see Davis*, 716 F.3d at 335, we have never required strict compliance with the claim allowance process. Rather, the thrust of our instruction in *Davis* was to remind bankruptcy courts that whether "a lien claimant is the holder of a 'secured claim' or an 'unsecured claim'" under § 1322(b)(2) turns on "whether the claimant's security interest has any actual 'value.'" *In re Lane*, 280 F.3d 663, 669 (6th Cir. 2002). Thus, *Nobelman* explained that the petitioners "were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim" but made clear that such a "determination does not necessarily mean that the 'rights' the bank enjoys as a mortgagee, which are protected by § 1322(b)(2), are limited by the valuation of its secured claim." 508 U.S. at 328–29. In other words, the valuation process in § 506(a)

---

[4] The recent amendments to the federal bankruptcy rules also support our view. Under the new rules, a debtor may request a valuation of a secured claim directly in his Chapter 13 plan. Fed. R. Bankr. P. 3012(b). And any determination in a confirmed plan regarding the value of a secured claim is binding on the holder of the claim, "even if the holder files a contrary proof of claim." Fed. R. Bankr. P. 3015(g)(1). Thus, the new rules plainly contemplate application of § 506(a) even when no formal proof of claim has been filed.

11

does not determine a creditor's rights under § 1322(b)(2).  Such rights turn on whether there is *any* value in the collateral.  *Id.* at 329.

Focusing on the value of the claim, rather than the claim allowance process as the trustee urges, explains why a secured creditor whose lien has real value may decide not to participate in the bankruptcy proceeding and rely only on its in rem right of foreclosure following the debtor's discharge.  *See U.S. Nat'l Bank in Johnstown v. Chase Nat'l Bank of N.Y.C.*, 331 U.S. 28, 33 (1947).  In the same vein, we think an entirely valueless lien may be stripped under § 1322(b) whether or not a proof of claim has been filed.

The trustee's contrary view would require us to ignore the plain fact that Tri-County's liens are entirely without value, and that such a creditor has no incentive to file a proof of claim.  Moreover, while the Code permits a debtor to file a proof of claim where a creditor has not, s*ee* § 501, requiring such an act merely so that a debtor may then strip the worthless lien only serves to drive up litigation costs.  As things stand now, PNC, which filed a proof of claim, has had its lien stripped.  But Tri-County, which did nothing, has had its lien survive.  That cannot be the law.


III.

To summarize, the ability of a Chapter 13 debtor to strip off an underwater lien stems from § 1322(b) not § 506(d).  The former provision permits plans to modify the rights of holders of unsecured claims.  Whether a creditor has an unsecured claim turns on the value of the underlying collateral not the mere existence of a security interest.  And in making this determination, courts are not limited to valuing claims that have been filed and

12

allowed.  Where, as here, a senior lienholder is only partially secured, any junior lienholder is by definition the holder of an unsecured claim for purposes of § 1322(b), which may be stripped without the filing of a proof of claim.

The decision of the district court is therefore reversed and the case is remanded for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*

13