**In the Matter of Frederick A. PEARL and Josephine P. Pearl, Debtors.**

**Bankruptcy No. 882–82591–17.**

United States Bankruptcy Court,
E.D. New York.

March 15, 1983.

Kenneth C. Dollmann, Holbrook, N.Y., Attorney for debtors.

Joseph Rubin by Keith H. Rothman, Smithtown, N.Y., for creditor.

### MEMORANDUM & ORDER

BORIS RADOYEVICH, Bankruptcy Judge.

By notice of motion filed November 11, 1982, the creditor, Mather Memorial Hospital of Port Jefferson, Inc., objects to the following claimed exemptions of the debtors Frederick and Josephine Pearl:

(1) Exemption of $20,000 equity in their homestead;

(2) Wedding rings exemption of $150;

(3) Watches valued at $70;

(4) Exemption of $443 cash on hand or on deposit.

On the motion's return date, January 6, 1983, neither side presented any proofs, instead requesting a summary judgment determination of the presented issues based upon submitted memorandum of law. As the memoranda raised possible constitutional considerations, this Court certified the proceeding to the New York State Attorney General by order dated January 10, 1983. Said party declined to intervene.

The relevant facts are that the debtors filed their petition with this Court on October 15, 1982. Their schedules and subsequent memoranda indicate that they own a parcel of real property located at 11 Arleen Avenue, Holbrook, New York as tenants by the entirety. This property is valued at approximately $36,300 and is subject to a purchase money mortgage lien of approximately $23,618. The debtors claim as exempt all their equity in the property up to a maximum of $20,000.

## MEMORANDUM

Before addressing the weightier issues presented, this Court will summarily dispose of the creditor's collateral objections. The law with respect to wedding rings, watches, and cash exemptions is patently clear and needs little in the way of judicial interpretation.

The debtors' schedules claim the combined worth of their wedding rings and watches to be $150 and $70 respectively. Section 5205 of the N.Y.C.P.L.R., as made applicable by Section 284 of the N.Y.Debt. & Cred.L. allows the debtors to each exempt a wedding ring and watch not exceeding $35 in value. Applying the facts at hand, it is obvious the watches were properly exempted and the rings were not. It is not this Court's function to comment on the adequacy of the applicable law, nor to endeavor to circumvent its import. However, as neither side presented any appraisal evidence of the rings' actual value, this Court will entertain a motion to amend the debtors' exemption schedules based upon a more practical valuation.

With regard to the debtors claimed $443 cash exemption, no supporting statutory authority can be discerned. Unlike the federal exemption scheme, cash may not be exempted in New York except pursuant to N.Y.Debt. & Cred.L. § 283(2),[1] or N.Y.C.P.

L.R. § 5205(d).[2] As the debtors have elected to exempt their homestead, and as their income was not executed upon within sixty days of their bankruptcy filing, no such exemptions are available.

Having disposed of the preliminaries, this Court will now address the case's predominant issue of whether New York State resident joint petitioners, who filed after the effective date of New York's "opt-out" statute,[3] may aggregate their homestead exemptions. At a casual glance it would appear that this matter simply involves a judicial determination of the state legislature's intent in enacting its homestead statute. However, closer scrutiny reveals that any interpretation of the state statute must resolve the conceptual problem of how to reconcile New York's homestead exemption within the overriding federal bankruptcy scheme.

In the case at bar the competing statutes are N.Y.C.P.L.R. § 5206 and 11 U.S.C. § 522(m). Section 5206 provides:

(a) Exemption of homestead. Property of one of the following types, not exceeding ten thousand dollars in value above liens and encumbrances, owned and occupied as a principal residence, is exempt from application to the satisfaction of a money judgment, unless the judgment was recovered wholly for the purchase price thereof:

---

1. Section 283(2) provides:

(2) Contingent alternative bankruptcy exemption. Notwithstanding section two hundred eighty-two of this article, a debtor, who:

(a) does not elect, claim, or otherwise avail himself of an exemption described in section fifty-two hundred six of the civil practice law and rules;

(b) utilizes to the fullest extent permitted by law as applied to said debtor's property, the exemptions referred to in subdivision one of this section which are subject to the five thousand dollar aggregate limit; and

(c) does not reach such aggregate limit, may exempt cash in the amount by which five thousand dollars exceeds the aggregate of his exemptions referred to in subdivision one of this section or in the amount of two thousand five hundred dollars, whichever amount is less...

2. Section 5205(d) provides:

(d) Income exemptions. The following personal property is exempt from application to the satisfaction of a money judgment, except such part as a court determines to be unnecessary for the reasonable requirements of the judgment debtor and his dependants:

(1) ninety per cent of the income or other payments from a trust the principal of which is exempt under subdivision (c);

(2) ninety per cent of the earnings of the judgment debtor for his personal services rendered within sixty days before and at any time after, an income execution is delivered to the sheriff or a motion is made to secure the application of the judgment debtor's earnings to the satisfaction of the judgment; . . .

3. It should be noted that constitutional objections to a state's exemption scheme become significantly stronger after a state precludes the alternative use of the federal exemption scheme.

(1) a lot of land with a dwelling thereon,

(2) shares of stock in a cooperative apartment corporation,

(3) units of a condominium apartment, or

(4) a mobile home.

But no exempt homestead shall be exempt from taxation or from sale for non-payment of taxes or assessments.

. . . .

(d) Exemption of homestead exceeding ten thousand dollars in value. The exemption of a homestead is not void because the value of the property exceeds ten thousand dollars but the lien of a judgment attaches to the surplus.

(e) Sale of homestead exceeding ten thousand dollars in value. A judgment creditor may commence a special proceeding in the county in which the homestead is located against the judgment debtor for the sale, by a sheriff or receiver, of a homestead exceeding ten thousand dollars in value. . . .

Section 522(m) provides that the bankruptcy exemptions enumerated in, or derived from § 522:

shall apply separately with respect to each debtor in a joint case.

A necessary precondition to a discussion of the compatibility of these statutes is a determination of each statute's legislative intent with respect to exemption stacking.

After reviewing the legislative history and tracing the evolution of New York's homestead statute from its original enactment in 1850, this Court is convinced that within the local law context of § 5206, the state legislature intended that judgment debtor spouses would not be allowed to aggregate the prescribed exemption. *See In re Feiss,* 15 B.R. 825 (Bkrtcy.E.D.N.Y. 1981) for an exhaustive discussion on the subject. This intent is evident from the language of the statute which attaches the exemption to the homestead res instead of providing for a grant of exemption to the individuals residing therein. *See In re Morrissey,* 74 B 489, 74 B 490 (Bankr.E.D.N.Y. dec. Jan. 17, 1975); *In re Davis,* 329 F.Supp.

1067 (E.D.Mich.1971). Any benefit which may run to a resident judgment debtor is merely an indirect incident of the immunity from execution granted to a homestead wherein the debtor's equity is less than $10,000, or to the first $10,000 in proceeds from the sheriff's sale of a homestead whose equity is greater than $10,000.

In contrast, the intention of Congress in enacting § 522(m) was that all allowable exemptions run to the benefit of each debtor spouse who filed a joint petition. *See Cheeseman v. Nachman,* 656 F.2d 60 (4th Cir.1981); *In re Rizzo,* 21 B.R. 913 (Bkrtcy. W.D.N.Y.1982); *In re Gustinis,* 16 B.R. 108 (Bkrtcy.E.D.Va.1981); *In re Alvarez,* 14 B.R. 940 (Bkrtcy.D.Col.1981). *See also* dicta *In re Sullivan,* 9 B.C.D. 140, at 146, 680 F.2d 1131 (7th Cir.1982); *In re Korff,* 14 B.R. 189 (Bkrtcy.E.D.Mich.1981). The language used in said statute is short and simple. Precedent requires that this Court effectuate the ordinary meaning of the language in the statute. *Richards v. U.S.,* 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); *U.S. v. Blasius,* 397 F.2d 203 (2d Cir.1968). *See In re Ancira,* 5 B.R. 673, 675 (Bkrtcy.N.D.Cal. 1981) for application of this principal to § 522(m). Though § 522(b) allowed for the state's exclusive designation of "what" properly may be exempted, it is clear that the adoption of § 522(m) was a congressional reservation of the right to direct "how" the state exemptions would be allocated in the instance of joint filing spouses. The imposition of this requirement indicates a congressional recognition that state exemptions may not always mesh cleanly within the bankruptcy context. Such a standard manifests a desire to insure that neither spouse is deprived of an exemption due to the imprecise and variable intricacies of local joint property and exemption laws.

In support of this interpretation it is reasoned that the underlying purpose of the inclusion of § 522(m) within the overall exemption scheme was to encourage spouses to file jointly. *See* 11 U.S.C. § 302; *Cheeseman v. Nachman, cite supra; In re Rizzo, cite supra; In re Sullivan, cite supra.* The allowance of an equal and simultaneous

benefit to joint filing spouses is viewed as a logically conceived effort to eliminate the possibility that the peculiarities of local law may motivate spouses to file individually in an effort to maximize the exemption benefit of their combined fresh start.[4] The removal of the potential incentive for spouses to separately weather their financial problems is viewed as furthering the spirit of the Code in its efforts to expeditiously and completely rehabilitate the debtors and start them out fresh. *See* H.R.Doc. No. 93–137, 93rd Cong., 1st Sess., Pts. I & II at pgs. 79, 81 (1973). *See also* H.R.Doc. No. 95–595 95th Cong., 1st Sess. at pgs. 118, 126, 321, 368 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787.

Having established the existence of an inconsistency between the two statutes, the next issue to be addressed involves a determination as to the feasibility of their coexistence. When confronted with potentially antagonistic statutory dictates, the state scheme must yield to the federal policy: U.S.C.A. Const. Art. VI, Cl. 2; *U.A.W., AFL–CIO v. Hoosier Carnival Co.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); *Testa v. Katt,* 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947). In such a situation, if at all possible, this Court is to attempt to reconcile the competing statutes by construing the state statute in a manner which will not impair the overiding federal policy. *See Jones v. Rath Packing Co.* 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977); *International Shoe Co. v. Pinkus,* 278 U.S. 261, 49 S.Ct. 108, 73 L.Ed. 318 (1929); *Cheeseman v. Nachman, cite supra; In re Gustinis, cite supra.*

It being already determined that § 5206 itself leaves no room to argue the right of joint debtors to a double exemption, this Court is left with only two alternatives. It must either void the state statute as an unconstitutional infringement upon § 522(m), or it must reconcile the conflict by finding an alternative source of state accedence to the federal policy.[5]

In the present case, an alternative source of the state's accedence to the federal mandate does exist within New York's opt-out statute, § 284[6] of the Debtor and Creditor Law. In enacting § 522(b)[7] of the Bankruptcy Code, Congress allowed the states to elect to preclude the availability of the federal exemption scheme in favor of its own exemptions. However, as the § 522(m) requirement is independent of the opt-out statute, the state can not relieve itself of its

---

**4.** The occasion is conceivable in states whose exemption schemes have the effect of limiting joint filing spouses to one exemption, that the spouses could double the allowed exemptions of their interest in joint property simply by separately pursuing individual bankruptcies in a manner which would preclude consolidation of their estates (i.e. one spouse would file after the close of the other's case). This Court can discern no equitable precedent which allows a Bankruptcy Court faced with the above scenario, to deny the subsequent filing spouse the benefit of a statutorily entitled exemption upon the grounds that the prior filing spouse has already taken advantage of it.

**5.** This Court does not concur with the precedent which concludes that as the statutes are irreconcilable, the supremacy clause and § 522(m) automatically mandate the doubling of exemptions regardless of the state's intention. *See In re Rizzo,* 21 B.R. 913 (Bkrtcy.W.D. N.Y.1982); *In re Korff, cite supra; In re Alvarez, cite supra; In re Gustinis, cite supra. See also* dicta within *Cheeseman v. Nachman, cite supra.* Such a holding improperly usurps a legislative power. Upon opting-out the state law is the source of substantive exemption rights. Section 522 does not require a doubling of exemptions. It merely sets a standard which the state law must meet. In this instance it is not the function of the judiciary to rewrite the state law. It is limited to ruling on the statute's constitutionality as it then exists.

**6.** Section 284 provides:

Exclusivity of exemptions. In accordance with the provisions of section five hundred twenty-two(b) of title eleven of the United States Code, debtors domiciled in this state are not authorized to exempt from the estate property that is specified under subsection (d) of such section.

**7.** Section 522(b) provides:

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate either—

(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; ...

obligation to provide each joint debtor with its designated exemptions. *In re Sullivan, cite supra* at 146. Where the existing state exemption law frustrates the § 522(m) purpose, it is an obvious and necessary conclusion that it must have been the intent of the state legislature, in enacting the opt-out statute, to accede to the federal policy and to allow the aggregation of exemptions within the bankruptcy context. To hold otherwise would be tantamount to stating that the state chose to adopt an exemption which is a constitutional nullity.

As additional support for this accedence argument, this Court takes judicial notice of the legislative history of New York's opt-out statute as evidenced within the legislative sponsor's and Governor's bill memorandum. *See* N.Y.S. Assembly Bill # 11207–A, Legislative Memorandum, Hon. Roger J. Robach, 1982; Governor Hugh Carey, Approval of Legislation Memorandum, Chp. 540 of the Session Laws of 1982; designated Courts Exhibits 1 & 2 respectively.

Aside from the sponsor's repeated reference to the expanded nature of the available New York exemptions within the bill, he expressly states that:

> the exemptions provided by this measure are more lenient than those now allowed in 40 other states. For example, for a husband and wife filing jointly, in excess of $35,000 in real and personal property may be declared exempt under its provisions, not including specific entitlements.

New York's personal property exemptions are sufficiently limited, that such an allegation could only be based upon the assumption that joint debtors could double their homestead exemption. As the sponsor intended his bill to allow the aggregation of exemptions, this Court must presume, in the absence of an indication otherwise, that the enactment reflects his intention.

To a similar effect the Governor's commentary on the purpose of the law provides additional support for finding the state's accedence to the § 522(m) directive. He states that:

> enactment of the bill will not foreclose consideration of those issues which are of legitimate concern. I am confident . . . that enactment will not discourage continued study of bankruptcy problems, including the effects of the bill on debtors, to assure that the bill does, in fact, enable debtors to make a fresh start . . .

This statement indicates that the design of the law was to supplement rather than frustrate the federal purpose. In doing so, it can only be concluded that the opt-out statute is to be read as giving this Court license to employ the New York exemptions in a manner which will advance the § 522(m) policy.

Based upon the foregoing arguments and mindful of the fact that it is both New York and federal policy to liberally construe exemption statutes (*See Perry v. Zarcone,* 98 Misc.2d 899, 414 N.Y.S.2d 604 (S.Ct. Suffolk Co.1979); *Scheer v. City of Syracuse,* 53 Misc.2d 80, 277 N.Y.S.2d 866 (S.Ct. Onandaga Co.1967); *Porter v. Aetna Casualty & Surety Co.,* 370 U.S. 159, 82 S.Ct. 1231, 8 L.Ed.2d 407 (1962); *In re Ageton,* 14 B.R. 833 (Bkrtcy.App.Pan. 9th Cir.1981); this Court holds that § 284 of the New York Debt. & Cred.Law allows for the aggregating of the N.Y.C.P.L.R. § 5206 real property exemption within the context of a bankruptcy proceeding.[8]

No decision will be made on the debtors' "Tenant/Owner" supremacy clause challenge to New York's opt-out statute. The debtors as owners of real property are benefited rather than injured by said statute. Accordingly, they have no standing to raise the issue.

Settle Order in accordance herewith.

---

**8.** It is recognized that this finding of New York's "actual" intent to allow exemption stacking moots the necessity for arguing the aforementioned "implied" accedence theory.

However, this issue is addressed as the dicta presented is supplementally supportive and may prove relevant in other opt-out states.