[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-10558

_____

D. C. Docket No. 8:11-bk-00369-MGW

IN RE: TAHISIA L. SCANTLING,

Debtor.

_____

WELLS FARGO BANK, N.A.,

Plaintiff-Appellant,

versus

TAHISIA L. SCANTLING,

Defendant-Appellee.

_____

Appeal from the United States Bankruptcy Court
For the Middle District of Florida, Tampa Division

_____

(June 18, 2014)

Before TJOFLAT, Circuit Judge, and MOORE[*] and SCHLESINGER,[**] District Judges.

SCHLESINGER, District Judge:

We have been asked to determine if a debtor can "strip off" a wholly unsecured junior mortgage in a Chapter 20 case. We conclude the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")[1] does not prohibit this result; therefore, we affirm.

## I.  FACTS

On November 27, 2009, Scantling filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Less than a year later, on March 30, 2010, Scantling received her Chapter 7 discharge.

On January 1, 2011, Scantling filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. On May 24, 2011, Scantling sought to determine the secured status of the second and third mortgages held by Wells Fargo Bank, N.A. ("the Bank") on Scantling's principal residence ("Residence"), to determine that the

---

[*]  Honorable Michael K. Moore, United States District Judge for the Southern District of Florida, sitting by designation.

[**]  Honorable Harvey E. Schlesinger, United States District Judge for the Middle District of Florida, sitting by designation.

[1]  The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 was part of comprehensive Amendment to the Bankruptcy Reform Act of 1978 as Amended. Amendments by Pub. L. 109-8 effective, except as otherwise provided 180 days after April 20, 2005.

Bank's second and third liens were wholly unsecured and to void those liens.  The Residence was subject to three liens held by the Bank.  The Bank filed claims regarding each of its liens:  Claim No. 3 regarding its first lien was for $121,808.85; Claim No. 5 regarding its second lien was for $79,369.79; and Claim No. 6 regarding its third lien was for $24,416.24.  According to Scantling, the Bank valued the Residence at $118,500, and for purposes of its opinion, the Bankruptcy Court accepted that valuation.

Given the undisputed fact that the value of the Scantling's Residence rendered the Bank's junior liens wholly unsecured, Scantling sought a declaration that the junior liens were void.  The Bank opposed this request.

On February 24, 2012, the Bankruptcy Court entered its opinion determining that Scantling could strip off the Bank's second and third liens on the Residence because they were wholly unsecured.  In a thorough and well-reasoned opinion, the Bankruptcy Court concluded:

> It is well established that a chapter 20 case is permitted under the Bankruptcy Code.  Equally clear is that a debtor in a chapter 13 case may strip off a wholly unsecured mortgage on the debtor's principal residence.  This strip off is accomplished, first, through a determination under § 506(a) that the creditor does not hold a secured claim and, second, by modifying the creditor's "rights" under § 1322(b)(2), by avoiding the lien that the creditor would otherwise be entitled to under nonbankruptcy law.  As such § 1325(a)(5) does not come into play, and

3

the debtor's ineligibility for a discharge is irrelevant to a strip off in a chapter 20 case.

On September 28, 2012, the Bankruptcy Court entered its order, based upon the previous opinion, concluding the Bank's second and third mortgage liens would be extinguished automatically without further order upon Scantling's completion of payments contemplated by her confirmed Chapter 13 plan.

## II.  STANDARDS OF REVIEW

The relevant facts are undisputed; consequently, we review *de novo* the Bankruptcy Court's conclusions of law. *DaimlerChrysler Fin. Servs. Americas LLC v. Barrett (In re Barrett)*, 543 F.3d 1239, 1241 (11th Cir. 2008).

## III.  DISCUSSION

This case presents a single issue—whether a debtor can "strip off" a wholly unsecured junior mortgage in a Chapter 20 case.[2]  To resolve this question, we must analyze the interplay between two provisions of the Bankruptcy Code 11 U.S.C. §§ 506 and 1322(b), following the enactment of the BAPCPA.

### A.  Statutory History

Prior to the BAPCPA, a debtor in a Chapter 13 case, filed soon after a Chapter 7 case, was eligible for a discharge, or "strip off," of a valueless lien.  Lien

---

[2]  The term "Chapter 20" is absent from the Bankruptcy Code.  It is a colloquialism used by bankruptcy practitioners.

4

avoidances pre-BAPCPA in Chapter 20 cases were, therefore, treated the same as in ordinary Chapter 13 cases. In other words, pre-BAPCPA, a bankruptcy court was able to strip off a valueless lien in a typical Chapter 13 proceeding. *See Tanner v. FirstPlus Fin. (In re Tanner)*, 217 F.3d 1357 (11th Cir. 2000).

The strip off procedure was a two-step process guided by 11 U.S.C. §§ 506 and 1322(b) of the Bankruptcy Code. First, § 506(a) provided a valuation procedure for the claim.[3]  Depending on the value of the collateral, a claim was either secured or unsecured. If a claim were valueless and classified as unsecured under § 506(a), then the second step, under § 1322(b)(2), provided the mechanism whereby a Chapter 13 bankruptcy plan could,

> modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.]

---

[3]  Section 506(a)(1) provides,

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, *is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property*, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a)(1) (emphasis added).

5

11 U.S.C. § 1322(b)(2).  Following this two-step approach, a bankruptcy court was able to strip off a completely valueless lien against a primary residence in a Chapter 13 proceeding.

This approach was, however, not without limitations.  The Supreme Court held that § 506(d) did not allow a lien to be modified based solely upon a § 506(a) valuation.  *Dewsnup v. Timm*, 502 U.S. 410, 417, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992).  Instead, the *Dewsnup* Court held that because the creditor possessed an allowed secured claim under § 502, § 506(d) was not implicated and the lien could not be avoided.  *Id.*  The Court rejected an interpretation of § 506(d) that departed from the long-established "pre-Code rule that liens pass through bankruptcy unaffected." *Id.*

Later, in *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), the Supreme Court addressed the interaction between § 1322(b)(2) and § 506(a) with respect to an undersecured first lienholder.  The debtor in *Nobelman* attempted to "strip down" a homestead lender's secured claim to the home's reduced value.  *Nobelman*, 508 U.S. at 326, 113 S.Ct. at 2108-09.  The *Nobelman* Court rejected the debtor's assertions and concluded that "§ 1322(b)(2) prohibits a Chapter 13 debtor from relying on § 506(a) to reduce an undersecured

6

homestead mortgage to the fair market value of the mortgaged residence." 508 U.S. at 325-26, 113 S.Ct. at 2108.

This Circuit discussed the impact of *Nobelman* on the rights of a wholly unsecured junior mortgagee in *Tanner v. Firstplus Financial, Inc. (In re Tanner)*, 217 F.3d 1357 (11th Cir. 2000). This court determined that a wholly unsecured lien on a debtor's principal residence is not protected from modification under § 1322(b)(2). *Id.* at 1359-60. Rather, this court determined, "[t]he better reading of sections 506(a) and 1322(b)(2), therefore, protects only mortgages that are secured by some existing equity in the debtor's principal residence." *Id.* at 1360.

*Tanner* distinguished *Nobelman* which explicitly prohibited lien strip downs where the affected lien encumbered the principal residence but was silent concerning strip offs. *Id.* at 1361. Therefore, *Tanner* explained:

> the only reading of both sections 506(a) and 1322(b)(2) that renders neither a nullity is one that first requires bankruptcy courts to determine the value of the homestead lender's secured claim under section 506(a) and then to protect from modification any claim that is secured by any amount of collateral in the residence.

*Id.* at 1360.

It appears that *Tanner* and our sister circuits correctly understand *Nobelman* to stand for the proposition that for a claim to be "secured" and trigger the antimodification provisions of § 1322(b)(2), the collateral must have at least some

7

value, as stated by the unambiguous language in § 506(a).  *See Tanner*, 217 F.3d at 1357; *Bartree v. Tara Colony Homeowners Assoc. (In Re Bartree)*, 212 F.3d 277, 280 (5th Cir. 2000); *McDonald v. Master Fin., Inc. (In Re McDonald)*, 205 F.3d 606, 615 (3d Cir. 2000).

It was in this atmosphere that Congress enacted the BAPCPA, in 2005, "'to correct perceived abuses of the bankruptcy system.'" *Branigan v. Davis*, 716 F.3d 331, 333 (4th Cir. 2013) (*quoting Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 232, 130 S.Ct. 1324, 1329, 176 L.Ed.2d 79 (2010)).  "An overarching goal was to 'help ensure that debtors who can pay creditors do pay them.'"  *Id.* (*quoting Ransom v. FIA Card Servs.*, —— U.S. ——, 131 S.Ct. 716, 721, 178 L.Ed.2d 603 (2011)).  The BAPCPA altered Chapter 13 by including,

> new requirements to make payments to holders of domestic support obligations, requirements to file prepetition tax returns, changes in maximum plan length, protection for pension contributions and pension loan repayments, requirements for scheduling of the confirmation hearing, requirements for greater payments on many secured debts, new methods of calculating disposable income under section 1325(b), new requirements for preconfirmation payments, new requirements to obtain a discharge, including postpetition credit education in addition to the prepetition credit counseling briefing required for all debtors, new exceptions to the chapter 13 discharge, new limits on obtaining a chapter 13 discharge after a prior bankruptcy discharge and new provisions permitting plan modification to obtain health insurance.

*Id*. at 333 (*citing* Collier on Bankruptcy ¶ 1300.36[10]).

8

The specific language of the BAPCPA at issue here is § 1328(f), which provides:

Notwithstanding subsections (a) and (b), the court shall not grant a discharge of all debts provided for in the plan or disallowed under § 502, if the debtor has received a discharge–

(1) in a case filed under chapter 7, 11, or 12 of this title during the 4-year period preceding the date of the order for relief under this chapter, or

(2) in a case filed under chapter 13 of this title during the 2-year period preceding the date of such order.

11 U.S.C. § 1328(f).

The Bank argues that lien-stripping is contingent on a debtor's ability to receive a Chapter 13 discharge. The only statute that allows confirmation of a plan and liens to be stripped is § 1325(a)(5),[4] which provides that a holder of a secured

---

[4] Section 1325 specifically provides,

(a) Except as provided in subsection (b), the court shall confirm a plan if--
 (1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;
 (2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
 (3) the plan has been proposed in good faith and not by any means forbidden by law;
 (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
 (5) with respect to each allowed secured claim provided for by the plan--
  (A) the holder of such claim has accepted the plan;
  (B)(i) *the plan provides that--*

9

lien retains the lien until either the underlying debt is paid or there is a discharge. Scantling is ineligible for discharge; therefore, the Bank maintains its liens must survive.

The Bank, further, contends that *Dewsnup* is applicable to Chapter 20 cases such that an "allowed secured claim" remains an allowed secured claim in the absence of a §502(b) objection for purposes of § 1325(a)(5)(B), which sets forth the requirements for confirming and implementing the contents of a Chapter 13 plan

---

*(I) the holder of such claim retain the lien securing such claim until the earlier of–*
    *(aa) the payment of the underlying debt determined under nonbankruptcy law; or*
    *(bb) discharge under section 1328; and*
(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
(iii) if--
    (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
    (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
(C) the debtor surrenders the property securing such claim to such holder; . . . .

11 U.S.C. § 1325 (emphasis added).

10

irrespective of § 506(d).  On the other hand, Scantling insists the Bankruptcy Court was correct, and that this Court's prior precedent in *Tanner* mitigates strongly in favor of, if not compels, affirmance of the Bankruptcy Court's decision.

A split of authority exists on whether a debtor may strip off of a worthless lien in a Chapter 20 case—along the lines of parties' arguments.  *Compare  Branigan v. Davis (In re Davis)*, 716 F.3d 331 (4th Cir. 2013) (concluding a Chapter 20 debtor may strip off liens); *and Fisette v. Zeller (In re Fisette)*, 455 B.R. 177 (B.A.P. 8th Cir. 2011) (same); *and In re Dang*, 467 B.R. 227 (Bankr. M.D.  Fla. 2012) (same); *and In re Okosisi*, 451 B.R. 90 (Bankr. D.Nev. 2011) (same); *and In re Tran*, 431 B.R. 230, 237 (Bankr. N.D. Cal. 2010) (same); *with In re Gerardin*, 447 B.R. 342 (Bankr. S.D. Fla. 2011) (holding that Chapter 20 debtors could not permanently strip off wholly unsecured junior liens); *and In re Quiros-Amy*, 456 B.R. 140 (Bankr. S.D. Fla. 2011) (same); *and In re Victorio*, 454 B.R. 759 (Bankr. S.D. Cal. 2011) (same); *and In re Fenn*, 428 B.R. 494 (Bankr. N.D. Ill. 2010) (same); *and In re Jarvis*, 390 B.R. 600 (Bankr. C.D. Ill. 2008) (same).

The majority view recognizes a strip off of the unsecured mortgage is allowed under the theory that a "Chapter 13 debtor need not be eligible for a discharge in order to take advantage of the protections afforded by Chapter 13." *In re Davis*, 716

11

F.3d at 338. If a strip off of a worthless lien is available under the bankruptcy code without a discharge a debtor may take advantage of such relief. *Id.*

The bankruptcy code provides that when a debtor's junior liens are worthless and unsecured under § 506(a), § 506 operates in tandem with § 1322(b) to strip liens in Chapter 13 cases. *Id.* The BAPCPA "did not amend" §§ 506 or 1322(b), "so the analysis permitting lien-stripping in Chapter 20 cases is no different than that in any other Chapter 13 case." *Id.* Congress, it is argued, intentionally left "the normal Chapter 13 lien-stripping regime where a debtor could otherwise satisfy the requirements for filing a Chapter 20 case." *Id.*

In contrast, those courts ascribing to the minority view contend the term "allowed secured claim" in § 1325(a)(5) is not contingent on a § 506(a) valuation. Instead, § 506(a) provides a judicial valuation method of an allowed secured claim, but that valuation does not modify the creditor's secured status. An "allowed secured claim," therefore, "merely describes (1) a claim, which is a 'right to payment' or a 'right to an equitable remedy' as defined in 11 U.S.C. § 101(5); (2) that is 'allowed,' meaning 'not objected to by an interested party' under 11 U.S.C. § 502(a); and (3) that is 'secured.'" *In re Davis*, 716 F.3d at 340 (Keenan, J., dissenting).

A junior lien is not worthless if it remains "allowed" and "secured" by the debtor's real property, and the lien remains in this status even after a debtor receives

12

a Chapter 7 discharge. *Id.* The *in rem* portion of the claims survive a debtor's Chapter 7 discharge. *Id.*

A Chapter 13 plan must comply with § 1325(a)(5), and a junior mortgagee creditor has an "allowed secured claim" against the debtor's bankruptcy estate. Section 1325(a)(5)(B)(I) provides that a debtor's Chapter 13 plan "must provide that the junior mortgagee creditors retain their liens on the properties until the earlier of (1) full payment by the debtors in the context of non-bankruptcy law, or (2) discharge." *Id.* Sections 1325(a)(5)(B)(i) and 1328(f) work in tandem to prohibit a Chapter 20 debtor "from stripping off valueless junior mortgages." *Id.*

Guided by *Tanner*, we find the reasoning of the majority view persuasive and adopt that view.[5] We agree with the other circuits who have considered this issue that a debtor, in a Chapter 13 setting, may strip off an unsecured mortgage on the debtor's principal residence. This strip off is accomplished through the § 506(a) valuation procedure that determines that the creditor does not hold a secured claim. Once this determination has been made, pursuant to § 1322(b)(2), the creditor's "rights" are modified by avoiding the lien to which the creditor would otherwise be entitled under

---

[5] We are also mindful of the recent unpublished opinion in *Wilmington Trust, National Ass'n v. Malone (In re Malone)*, No. 13-13688, 2014 WL 1778982 (11th Cir. May 6, 2014), which was decided after oral argument in the instant case, in which a panel of this court recently found it was bound by prior published decisions and affirmed a decision by the bankruptcy court, in a Chapter 7 proceeding, that allowed a debtor to strip off a worthless second priority lien.

13

nonbankruptcy law. Under such analysis, §1325(a)(5) is not involved, and the debtor's ineligibility for a discharge is irrelevant to a strip off in a Chapter 20 case. The BAPCPA did not amend §§ 506 or 1322(b), so the analysis permitting strip offs in Chapter 20 cases is no different than that in any other Chapter 13 case.

## IV. CONCLUSION

Based on the foregoing and our review of the record and the parties' briefs, we affirm the Bankruptcy Court's decision.

**AFFIRMED.**

14