FILED

JUL 09 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re:<br><br>SERGE MICHEL BOUKATCH and<br>LORI JEAN BOUKATCH,<br><br>Debtors.<br>_____<br><br>SERGE MICHEL BOUKATCH; LORI<br>JEAN BOUKATCH,<br><br>Appellants,<br><br>v.<br><br>MIDFIRST BANK; RUSSELL A.<br>BROWN, Chapter 13 Trustee,<br><br>Appellees.<br>_____ | BAP No.   AZ-14-1483-KiPaJu<br><br>Bk. No.   2:14-bk-04721-EPB<br><br><br><br><br><br>**O P I N I O N** |

Argued and Submitted on June 19, 2015
at Phoenix, Arizona

Filed - July 9, 2015

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Eddward P. Ballinger, Jr., Bankruptcy Judge, Presiding

---

Appearances:     Lawrence D. Hirsch of Parker Schwartz, PLLC, argued
                 for appellants; Craig Lawrence Friedrichs argued
                 for appellee Chapter 13 Trustee Russell A. Brown.

---

Before:  KIRSCHER, PAPPAS and JURY, Bankruptcy Judges.

KIRSCHER, Bankruptcy Judge:

Chapter 13[1] debtors, Serge M. Boukatch and Lori J. Boukatch ("Debtors"), appeal an order denying their motion to avoid a lien on their principal residence.[2] The bankruptcy court determined that, as a matter of law, a "chapter 20"[3] debtor is not entitled to avoid a wholly unsecured junior lien under §§ 506(a) and 1322(b)(2) against the debtor's principal residence when no discharge will be entered in the pending chapter 13 case. On this issue of first impression, we REVERSE and REMAND.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Debtors filed a chapter 13 bankruptcy case on February 8, 2011. They valued their residence located in Phoenix, Arizona at $187,500. Debtors identified two liens against the residence: Wells Fargo Bank NA ("Wells Fargo") held a first lien, amounting to $228,300; and MidFirst Bank ("MidFirst") held a second lien, amounting to $67,484.96. The bankruptcy court converted the case to a chapter 7 case on November 21, 2012. The chapter 7 trustee abandoned the residence, given it was burdensome and of inconsequential value to the estate. Debtors received a chapter 7 discharge on March 25, 2013.

Debtors filed the instant chapter 13 bankruptcy case on

---

[1] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2] Appellee MidFirst Bank has not appeared in this appeal.

[3] We understand the term "chapter 20" debtor is a chapter 13 debtor who has received a chapter 7 discharge within the four-year time period set forth in § 1328(f) prohibiting further discharge.

-2-

April 2, 2014, less than four years after the filing of Debtors' case in which they received their chapter 7 discharge. Debtors again valued their residence at $187,500. In addition to Wells Fargo's first lien for $228,300, Debtors identified MidFirst's second, wholly unsecured junior lien for $67,484, contending that MidFirst held a lien only; their personal liability on this debt had been discharged in the prior chapter 7 case.

Debtors filed an amended chapter 13 plan on June 27, 2014, which provided the following regarding MidFirst's junior lien:

**LIEN STRIPPING:**

**SECOND LIEN:** The claim of MidFirst Bank was discharged on 3/25/13 (dkt #89) in Debtors' Chapter 7 case (2:11-bk-03143 RJH) and this second place lien is totally unsecured. The property is encumbered by a first lien in favor of Wells Fargo in the amount of $228,300 and the fair market value of the property is $187,500. Debtors' counsel shall file a separate motion to set aside the MidFirst Bank lien prior to confirmation of the plan pursuant to 11 U.S.C. § 506(a) and the lien of creditor, MidFirst Bank shall be stripped from the property. No payments shall be made to MidFirst Bank.

Am. Ch. 13 Plan, Dkt. no. 20 at 6. Debtors conceded they were ineligible for a chapter 13 discharge under § 1328(f)(1). Id. Appellee, Chapter 13 Trustee Russell A. Brown ("Trustee"), who supports Debtors on appeal, filed a motion to deny entry of discharge; the bankruptcy court granted that motion.

On July 7, 2014, Debtors filed a motion to determine the value of the residence, seeking to avoid or "strip off" MidFirst's wholly unsecured junior lien under §§ 506(a) and 1322(b)(2) (the "Lien Strip Motion"). MidFirst did not object to Debtors' amended chapter 13 plan or the Lien Strip Motion; Trustee did not object to the "Lien Stripping" provision in Debtors' amended plan.

On July 28, 2014, Debtors filed a Notice of No Objection as

-3-

to the Lien Strip Motion. Despite the lack of any objection, the bankruptcy court denied the Lien Strip Motion on October 1, 2014. The bankruptcy court did not conduct a hearing. The court's order sets forth its limited findings and conclusions:

> The question presented is whether a "chapter 20" debtor can invoke § 506 and § 1322 to permanently strip unsecured liens, in the absence of a discharge. Under the analysis of *Victorio v. Billingslea*, 470 B.R. 545 (S.D. Cal. 2012), the answer is no. For this reason, the motion is denied.

Order, Dkt. no. 40. Debtors timely filed their notice of appeal on October 7, 2014.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(K). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Is a "chapter 20" debtor entitled to avoid a wholly unsecured junior lien against the debtor's principal residence when no discharge will be entered?

## IV. STANDARD OF REVIEW

The bankruptcy court's conclusions of law, including its interpretation of the Bankruptcy Code, are reviewed de novo. Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.), 503 F.3d 933, 940 (9th Cir. 2007).

## V. DISCUSSION

**A. The Ninth Circuit Court of Appeals has a pending appeal that may address, in part, whether a lien may be stripped off a principal residence in the absence of a discharge.**

The question before us is whether a chapter 20 debtor can avoid or "strip off" a wholly unsecured junior lien against the debtor's principal residence in the absence of a discharge. More specifically, can a debtor, who has been discharged of personal

-4-

liability for a home mortgage debt by receiving a chapter 7 discharge, modify the in rem rights of the holder of the mortgage debt by avoiding the lien through a chapter 13 plan, even though the debtor is ineligible for discharge?  The Ninth Circuit has not yet addressed this issue; however, the Circuit may consider this issue, among others, in the In re Blendheim appeal, No. 13-35354.  In an earlier order which is not on appeal to the Circuit, the bankruptcy court in Blendheim held that a debtor need not be eligible for a chapter 13 discharge to file a chapter 13 plan that proposes to strip off a wholly unsecured lien from the debtor's principal residence.  In re Blendheim,[4] 2011 WL 6779709, at *5 (Bankr. W.D. Wash. Dec. 27, 2011).  Other facts and issues may distinguish Blendheim from the appeal before us.  The issue raised in Blendheim involves a default order disallowing a secured lender's proof of claim and the subsequent process to avoid that lender's first lien.  In Blendheim, the Circuit, after oral argument, requested additional briefing on whether it "should require, consistent with Dewsnup v. Timm, 502 U.S. 410 (1992), that a bankruptcy court first determine that a lien is substantively invalid before voiding that lien under [] § 506(d)."  Order, Ninth Circuit Court of Appeals No. 13-35354, Dkt. no. 49, Dec. 22, 2014.  The strip off of a junior wholly unsecured lien in a chapter 13 case that we address in our present appeal is far more common than the issues before the Ninth Circuit in Blendheim.

Two other Circuit Courts of Appeals and two Bankruptcy

---

[4] Sometimes "Blendheim" is spelled with a "d" and sometimes without ("Blenheim," as it is on Westlaw), but the correct spelling is with a "d."

-5-

Appellate Panels have considered the issue before us, each holding that such liens may be stripped, regardless of the debtor's eligibility for a discharge. See Wells Fargo Bank, N.A. v. Scantling (In re Scantling), 754 F.3d 1323, 1325 (11th Cir. 2014), abrogating In re Gerardin, 447 B.R. 342 (Bankr. S.D. Fla. 2011) (holding that chapter 20 debtors could not permanently strip off wholly unsecured junior liens) and In re Quiros-Amy, 456 B.R. 140 (Bankr. S.D. Fla. 2011) (same)); Branigan v. Davis (In re Davis), 716 F.3d 331, 337-38 (4th Cir. 2013); In re Cain, 513 B.R. 316, 322 (6th Cir. BAP 2014); Fisette v. Keller (In re Fisette), 455 B.R. 177, 186-87 (8th Cir. BAP 2011). As we explain below, we agree that a chapter 20 debtor can strip off a wholly unsecured junior lien against the debtor's principal residence in the absence of a discharge.

**B.  Lien stripping in a typical chapter 13 case.**

In a chapter 13 case in which the debtor is eligible for discharge, §§ 506(a) and 1322(b) enable the debtor to strip off a wholly unsecured lien against the debtor's principal residence. Zimmer v. PSB Lending Corp. (In re Zimmer), 313 F.3d 1220 (9th Cir. 2002). The lien strip procedure in a chapter 13 case is a two-step process. Id. at 1226-27 (following Nobelman v. Am. Sav. Bank (In re Nobelman), 508 U.S. 324, 328-29 (1993) (court must first engage in the § 506(a) valuation process before determining the claim's status for purposes of § 1322(b)(2))). Section 506(a),[5] which is applied first, provides a valuation procedure

---

[5] Section 506(a)(1) provides, in relevant part, that an allowed claim of a creditor secured by a lien on property in which
(continued...)

-6-

and bifurcates creditors' claims into "secured claims" and "unsecured claims." Id. at 1222-23. "'Secured claim' is a term of art within the Bankruptcy Code, and means something different than it does for a creditor to have a security interest or lien outside of bankruptcy." In re Okosisi, 451 B.R. 90, 93 (Bankr. D. Nev. 2011). Whether a creditor who has a security interest in the debtor's property is considered a "secured" creditor under the Bankruptcy Code depends upon the valuation of the property. In re Zimmer, 313 F.3d at 1223 (citing § 506(a)). A claim is not a "secured claim" to the extent that it exceeds the value of the property that secures it. Id.

Section 1322(b)(2)[6] allows chapter 13 debtors to modify the rights of creditors holding both secured and unsecured claims. See § 1322(b)(2) (directing that a chapter 13 plan may "modify the rights of holders of secured claims . . . or of holders of unsecured claims"). But, a chapter 13 debtor may not modify the rights of "holders of secured claims" who only hold a security interest in real property that is the debtor's principal residence. Id. This subsection is commonly known as the "antimodification" provision. "However, the antimodification

---

[5](...continued)
the estate has an interest is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, and is an unsecured claim to the extent that the value of such creditor's interest is less than the amount of such allowed claim.

[6] Section 1322(b)(2) provides that a chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."

-7-

protection of [§] 1322(b)(2) only operates to benefit creditors who may be classified as secured creditors **after** operation of [§] 506(a)." In re Okosisi, 451 B.R. at 93 (citing In re Zimmer, 313 F.3d at 1226) (emphasis in original); Frazier v. Real Time Resolutions, Inc. (In re Frazier), 469 B.R. 889, 898 (E.D. Cal. 2012) (citing In re Zimmer) aff'g 448 B.R. 803 (Bankr. E.D. Cal. 2011).

If, after applying § 506(a), the creditor's claim is determined to be "secured," which includes partially secured claims (i.e., undersecured claims), the creditor is still the "holder of a secured claim" and the debtor is unable to reduce or "strip down" the undersecured claim to the principal residence's fair market value. See In re Nobelman, 508 U.S. at 329-332; In re Okosisi, 451 B.R. at 93. However, if "the claim is determined to be wholly unsecured, the rights of the 'creditor holding only an unsecured claim may be modified under § 1322(b)(2),' and the creditor's lien may be avoided, notwithstanding the antimodification protection provided for in [§] 1322(b)(2)." In re Okosisi, 451 B.R. at 93-94 (quoting In re Zimmer, 313 F.3d at 1227); Lam v. Investors Thrift (In re Lam), 211 B.R. 36, 40 (9th Cir. BAP 1997) (antimodification provision protecting a loan secured by an interest in debtor's principal residence does not apply if no value exists to which the security interest can attach).

The question, therefore, becomes whether a chapter 20 debtor is entitled to strip off such liens when no chapter 13 discharge will be entered. Courts across the nation are split on the issue. ////

-8-

**C. Split of authority on lien stripping in chapter 20 cases.**

The Bankruptcy Code allows debtors to file chapter 20 cases. Johnson v. Home State Bank, 501 U.S. 78, 87 (1991). The Supreme Court held in Johnson that nothing in the Code forecloses the benefit of chapter 13 reorganization to a debtor who previously has filed for chapter 7 relief. Id. Before BAPCPA, chapter 20 debtors could obtain a chapter 13 discharge after having received a discharge in chapter 7 without restriction. The Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") enacted in 2005 imposed a restriction by adding § 1328(f), which states that a court cannot grant debtors a discharge in a chapter 13 case filed within four years of the filing of a case wherein a discharge was granted in chapter 7. § 1328(f)(1).

As stated earlier, the two Circuit Courts and two Bankruptcy Appellate Panels that have addressed this issue have held that a chapter 20 debtor may strip a wholly unsecured junior lien in the absence of a discharge. This is one of three approaches courts have adopted. See In re Jennings, 454 B.R. 252, 256-57 (Bankr. N.D. Ga. 2011).

**1. The first approach**

Courts utilizing the first approach hold that stripping off wholly unsecured liens in chapter 20 cases is not permissible because it amounts to a "de facto discharge," which is prohibited by § 1328(f). Lindskog v. M & I Bank FSB (In re Lindskog), 451 B.R. 863, 865-66 (Bankr. E.D. Wis. 2011) (permitting chapter 20 debtor to strip off lien would create an "end run" around § 1328(f)), aff'd, 480 B.R. 916 (E.D. Wis. 2012); In re Fenn, 428 B.R. 494, 500 (Bankr. N.D. Ill. 2010) (allowing permanent strip

off of junior mortgage lien after chapter 20 debtor completes plan "results in a de facto discharge"); In re Mendoza, 2010 WL 736834, at *4 (Bankr. D. Colo. Jan. 21, 2010) (allowing avoidance of second mortgage lien through subsequent chapter 13 filing would be tantamount to granting debtor a discharge as to that debt and would render § 1328(f) inoperable), abrogated by Zeman v. Waterman (In re Waterman), 469 B.R. 334 (D. Colo. 2012); In re Winitzky, 2009 WL 9139891, at *3 (Bankr. C.D. Cal. May 7, 2009) ("a lien strip would allow a debtor to simply do indirectly what the Supreme Court has ruled he may not do directly"); Blosser v. KLC Fin., Inc. (In re Blosser), 2009 WL 1064455, at *1 (Bankr. E.D. Wis. Apr. 15, 2009) ("[A]llowing a debtor to file Chapter 7, discharge all dischargeable debts and then immediately file Chapter 13 to strip off a second mortgage lien would not be much different than simply avoiding the mortgage lien in the Chapter 7 itself.  But Chapter 7 debtors are not allowed to use § 506 to avoid liens.").

To support their position that the Code prohibits lien stripping in chapter 20 cases, these courts rely on an interpretation of Dewsnup v. Timm, 502 U.S. 410, 417 (1992),[7] which ended the practice of stripping undersecured consensual liens in chapter 7 cases using § 506(d), and on the discharge

---

[7] On June 1, 2015, the Supreme Court extended Dewsnup in chapter 7 cases to wholly unsecured junior liens in Bank of America, N.A. v. Caulkett, 135 S. Ct. 1995 (2015).  Nobelman "addressed the interaction between the meaning of the term 'secured claim' in § 506(a) and an entirely separate provision, § 1322(b).  Nobelman offers no guidance on the question presented in these [chapter 7] cases because the Court in Dewsnup already declined to apply the definition in § 506(a) to the phrase 'secured claim' in § 506(d)."  Caulkett, 135 S. Ct. at 2000 (citation omitted).

-10-

requirement in § 1325(a)(5). In re Cain, 513 B.R. at 320; In re Frazier, 469 B.R. at 895. The argument continues that § 1325(a)(5)(B)(i)[8] requires a chapter 13 plan to provide that the holder of a secured claim retain the lien securing the claim until either the underlying debt is paid or a discharge is entered pursuant to § 1328. In re Fenn, 428 B.R. at 500. See also In re Jarvis, 390 B.R. 600, 605-06 (Bankr. C.D. Ill. 2008). If the debtor is not eligible for a chapter 13 discharge due to a previous chapter 7 discharge, the lien strip cannot occur, because the "strip off/avoidance occurs at discharge." In re Fenn, 428 B.R. at 500; accord In re Jarvis, 390 B.R. at 607. In other words, these courts hold that a chapter 20 lien strip is not allowed because a chapter 13 discharge is required to strip the lien.

## 2. The second approach

Courts adopting the second approach allow chapter 20 lien

[8] Section 1325(a)(5) provides in part that

> with respect to each allowed secured claim provided for by the plan —
>
> (A) the holder of such claim has accepted the plan; [or]
>
> (B) (i) the plan provides that —
>
> > (I) the holder of such claim retain the lien securing such claim until the earlier of —
> >
> > > (aa) the payment of the underlying debt determined under nonbankruptcy law; or
> > >
> > > (bb) discharge under section 1328; and
> >
> > (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law[.]

-11-

stripping but hold that the parties' prebankruptcy rights are reinstated by operation of law after the plan has been consummated absent discharge or payment in full; therefore, the lien avoidance can never be permanent. In re Victorio, 454 B.R. 759, 781 (Bankr. S.D. Cal. 2011) (chapter 20 debtor cannot permanently avoid a wholly unsecured junior lien without discharge or paying it in full during the course of chapter 13 plan), aff'd sub nom. Victorio v. Billingslea, 470 B.R. 545 (S.D. Cal. 2012); Grandstaff v. Casey (In re Casey), 428 B.R. 519 (Bankr. S.D. Cal. 2010) (same); In re Jarvis, 390 B.R. at 605-06 (discharge is a necessary prerequisite to permanency of lien avoidance); In re Trujillo, 2010 WL 4669095, at *2 (Bankr. M.D. Fla. Nov. 10, 2010) (absent a discharge any modifications to creditor's rights are not permanent and have no binding effect once plan ends), aff'd sub nom. Trujillo v. BAC Home Loan Servicing, L.P. (In re Trujillo), 2012 WL 8883694 (M.D. Fla. Aug. 10, 2012), abrogated by In re Scantling, supra; In re Lilly, 378 B.R. 232, 236 (Bankr. C.D. Ill. 2007) ("Where a debtor does not receive a discharge, however, any modifications to a creditor's rights imposed in the plan are not permanent and have no binding effect once the term of the plan ends."). In this bankruptcy case, the bankruptcy court adopted this approach, relying on Victorio.

These courts posit that chapter 13 cases can end in only one of three ways: conversion, dismissal or discharge. This is true whether it be pre- or post-BAPCPA. See In re Victorio, 454 B.R. at 775, 778 (citing Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1223 (9th Cir. 1999)); In re Casey, 428 B.R. at 522-23. They further point out that actions taken to avoid a lien are

-12-

undone if the case is dismissed or converted prior to the successful completion of all plan payments. The argument continues that because the debtor is ineligible for a chapter 13 discharge, the only way to make the lien avoidance "permanent" is by paying the debt in full during the course of the chapter 13 plan. See § 1325(a)(5)(B)(i)(I)(aa), (bb). Thus, without discharge, the only way to conclude the case is dismissal or conversion, either of which reinstates the avoided lien. See §§ 1325(a)(5)(B)(i)(II), 348(f)(1)(C)(I).

The bankruptcy court in In re Victorio rejected the notion that § 1328(f), added by BAPCPA, created what courts have referred to as the "fourth option" for permanency of lien avoidance: the completion of all plan payments and closing the case without discharge. 454 B.R. at 775-76, 778-80 (discussing In re Okosisi and the "court-invented 'fourth option'"); Victorio, 470 B.R. at 555-56 (district court rejecting the fourth option as a "fallacy").

### 3. The third approach

Courts adopting the third approach allow chapter 20 lien stripping "because nothing in the Bankruptcy Code prevents it." In re Jennings, 454 B.R. at 257. These courts contend the mechanism that voids the lien is plan completion and that chapter 20 cases end in administrative closing rather than dismissal. Section 350(a) provides: "After an estate is fully administered and the court has discharged the trustee, the court shall close the case." Rule 5009(a) provides: "If in a . . . chapter 13 case the trustee has filed a final report and final account and has certified that the estate has been fully administered, . . . ,

-13-

there shall be a presumption that the estate has been fully administered." As discharge is not available in a chapter 20 case pursuant to § 1328(f), after the debtor completes all payments and complies with the terms of the confirmed plan, the bankruptcy case will be closed without entry of a discharge. See In re Okosisi, 451 B.R. at 99. Given closure and not dismissal after plan completion, "the code sections that reverse any lien avoidance actions contained within a chapter 13 plan upon conversion or dismissal are not implicated, and, thus, do not act to prevent the permanence of the lien avoidance. Once a debtor successfully completes all plan payments . . . , the provisions of the plan become permanent, and the lien avoidance is, similarly, permanent." Id. at 100 (citations omitted).

A confirmed plan is binding on the debtor and the creditor and vests all property of the estate in the debtor "free and clear of any claim or interest of any creditor provided for by the plan." § 1327(c). Provided the confirmed plan remains in effect, avoided liens remain avoided, as the plan is binding and through "res judicata precludes a creditor from bringing a collateral attack of that order." In re Okosisi, 451 B.R. at 100. Only revocation of the confirmed plan or case conversion or dismissal can undo the res judicata effect of a confirmed plan. Id. If all confirmed plan payments are made and plan terms are satisfied, confirmation of the plan will not be revoked and the case will not be converted or dismissed; the case will be closed leaving the res judicata effect of the order confirming the plan in place. Id.

In other words, under this approach, the propriety of a lien strip is not dependent upon discharge. See, e.g., In re

-14-

*Scantling*, 754 F.3d at 1329-30 (chapter 20 debtors can permanently strip off wholly unsecured junior liens; ineligibility for a discharge is "irrelevant"); *In re Davis*, 716 F.3d at 337-38 (Code allows chapter 20 debtors to strip off wholly unsecured junior liens; eligibility for discharge is "not determinative"); *In re Cain*, 513 B.R. at 322 (holding same and reasoning that the wholly unsecured status of the creditor's claim, rather that the debtor's eligibility for a discharge, is determinative); *In re Waterman*, 469 B.R. at 339-40 (same); *In re Frazier*, 469 B.R. at 895-96 (same); *In re Fisette*, 455 B.R. at 186-87 (same); *In re Fair*, 450 B.R. 853, 857-58 (E.D. Wis. 2011) (nothing in the Code ties the modification of an unsecured lien to obtaining a discharge under chapter 13); *In re Blendheim*, 2011 WL 6779709, at *5 (same); *In re Jennings*, 454 B.R. at 257; *In re Okosisi*, 451 B.R. at 103 (holding same and reasoning that lien avoidance under *In re Zimmer* is independent of the granting of a discharge, and the permanence of such avoidance is assured by § 1327); *In re Hill*, 440 B.R. 176, 181-82 (Bankr. S.D. Cal. 2010) (chapter 20 lien strips are permitted absent discharge so long as plan otherwise complies with Code requirements); *In re Tran*, 431 B.R. 230, 235 (Bankr. N.D. Cal. 2010), *aff'd*, 814 F. Supp. 2d 946 (N.D. Cal. 2011).

**D.    The bankruptcy court erred in denying the Lien Strip Motion on the basis that Debtors were not eligible for a chapter 13 discharge.**

We join the "growing consensus of courts" that have followed the third approach and hold that nothing in the Code prevents chapter 20 debtors from stripping a wholly unsecured junior lien against the debtor's principal residence, notwithstanding their lack of eligibility for a chapter 13 discharge.  This approach is

-15-

consistent with Nobelman and Zimmer, because it starts by determining the status of the claim under § 506(a). See In re Scantling, 754 F.3d at 1326-27, 1329 (citing Nobelman and Tanner v. FirstPlus Fin., Inc, (In re Tanner), 217 F.3d 1357 (11th Cir. 2000), the Eleventh Circuit's equivalent to Zimmer); In re Davis, 716 F.3d at 338 (citing Nobelman to hold that § 506(a) valuation must be done first to determine claim's status before analyzing whether § 1322(b)(2) bars its modification); In re Cain, 513 B.R. at 322 (citing Nobelman and Lane v. W. Interstate Bancorp (In re Lane), 280 F.3d 663, 669 (6th Cir. 2002), the Sixth Circuit's equivalent to Zimmer, to hold that by failing to first determine the proper classification of the creditor's claim under § 506(a), the bankruptcy court disregarded the "road map" set forth in Nobelman and Lane).

No one disputes that under § 506(a) MidFirst's lien has no value because the senior lien held by Wells Fargo exceeds the value of the property by approximately $40,000. Consequently, Nobelman and Zimmer dictate that MidFirst's claim is "unsecured" under § 506(a). See In re Zimmer, 313 F.3d at 1223 (for creditor to have a "secured claim" there must be value for the creditor's interest in the collateral). Therefore, MidFirst holds only an "unsecured claim" for purposes of § 1322(b)(2); the claim is not subject to its antimodification protections. See § 1322(b)(2) (protecting holders of "secured claims" secured only by a security in a debtor's principal residence).

Contrary to those courts adopting the second approach, because MidFirst's claim is unsecured, we determine § 1325(a)(5) (protecting the holder of a secured claim until the debt is paid

-16-

or the debtor is discharged) does not apply. This is because wholly unsecured liens are not "allowed secured claims" as the opening language to that section specifies. See In re Scantling, 754 F.3d at 1329-30 (§ 1325(a)(5) does not involve unsecured claims and debtor's ineligibility for a discharge is "irrelevant" for lien strip in chapter 20 case); In re Davis, 716 F.3d at 338 ("Because the liens in these cases have no value, they are wholly unsecured claims, which leaves no role in the analysis for section 1325(a)(5)."); In re Cain, 513 B.R. at 322 (same); In re Frazier, 469 B.R. at 898 n.10 ("Section 1325(a)(5) has no applicability to unsecured allowed claims, which are separately governed by the confirmation requirements of § 1325(a)(4)."); In re Fisette, 455 B.R. at 186 (the requirements of § 1325(a)(5) apply only to an **"allowed secured claim,"** not a claim which has been classified unsecured via § 506(a)) (emphasis in original); In re Okosisi, 451 B.R. at 97 (for § 1325(a)(5) to apply, the claim would first have to be classified as "an allowed secured claim" within the meaning of § 1325(a)(5)); In re Hill, 440 B.R. at 183.

To remain true to the holding of In re Zimmer, MidFirst's unsecured claim cannot logically be treated differently under § 1325 than it is treated under § 1322. In re Hill, 440 B.R. at 183 (citing United States v. Snyder, 343 F.3d 1171, 1179 (9th Cir. 2003) which held that a creditor who did not hold a secured claim under § 506(a) had no right to other benefits of "secured status in the bankruptcy proceeding"). Under In re Zimmer, the wholly unsecured status of MidFirst's claim, rather than Debtors' eligibility for a discharge, is determinative. BAPCPA did not change this outcome. In re Okosisi, 451 B.R. at 103.

-17-

Moreover, we also disagree with the view that a lien strip in a "no discharge" chapter 20 case amounts to a "de facto" discharge. In rejecting this view, one court stated:

> Simply put, stripping off a lien is not the same thing as being discharged from personal liability for the debt underlying that lien. As the Supreme Court has explained, a bankruptcy discharge "extinguishes only one mode of enforcing a claim — namely, an action against the debtor in personam — while leaving intact another — namely, an action against the debtor in rem." Johnson v. Home State Bank, 501 U.S. 78, 84 (1991). Thus, a discharge releases a debtor from in personam liability, whereas a strip off affects a creditor's ability to proceed against the debtor in rem. Fisette, 455 B.R. at 187 n.9.

In re Waterman, 469 B.R. at 340. By seeking to strip off a wholly unsecured junior lien, Debtors seek to do just that: avoid the lien. They do not seek a discharge. In re Fisette, 455 B.R. at 186-87. See In re Fair, 450 B.R. at 857 ("Congress did not intend to prevent lien stripping through § 1328(f)(1), and it is inaccurate to characterize lien stripping as a de facto discharge under the bankruptcy code."); In re Okosisi, 451 B.R. at 101 (§ 1328(f) only prohibits discharge and court would not read any further restrictions into the Code); In re Hill, 440 B.R. at 182 ("Since the [creditor's] debt was already discharged, or changed to non-recourse status in the Chapter 7 case, a second discharge for the Debtors in this Chapter 13 case would be redundant."). The discharge imposes a statutory injunction preventing the creditor from enforcing the discharged debt against the debtor personally or against specified assets; it does not release the lien from the debtor's property. In re Frazier, 448 B.R. at 809 (citing Johnson, 501 U.S. 78).

We conclude that § 1328(f)(1) does not prevent Debtors' ability to strip off MidFirst's wholly unsecured junior lien in

-18-

their chapter 13 plan, because nothing in the Bankruptcy Code prevents chapter 20 debtors from stripping such liens off their principal residence under §§ 506(a)(1) and 1322(b)(2). We further conclude that plan completion is the appropriate end to Debtors' chapter 20 case. Unlike a typical chapter 13 case, the lien avoidance will become permanent not upon a discharge, but rather upon completion of all payments as required under the plan. In re Davis, 716 F.3d at 338; In re Frazier, 469 B.R. at 900; In re Blendheim, 2011 WL 6779709, at *6; In re Okosisi, 451 B.R. at 99-100; In re Frazier, 448 B.R. at 810; In re Tran, 431 B.R. at 235.

We conclude that the bankruptcy court erred when it denied the Lien Strip Motion on the basis that Debtors were not eligible for a chapter 13 discharge.

## VI. CONCLUSION

For the foregoing reasons, we REVERSE the decision of the bankruptcy court and REMAND for further proceedings consistent with this opinion.